(26 Misc. Rep. 493.)

### BOHNSACK v. McDONALD.

(Supreme Court, Special Term, New York County. February, 1899.)

1. DEED—CONSTRUCTION—RESTRICTIONS.

In a deed of lots located in the residence portion of a city, a covenant by the grantee not to carry on or permit any offensive or dangerous trade or business, does not prevent the grantee from constructing a temporary railroad on the lots, over which to carry soil excavated by him from other land, though such use may be a nuisance.

2. NUISANCE—RIGHT TO MAINTAIN.

Where one having a contract to build a reservoir for a city uses railroad tracks, which the company had abandoned, over which to run cars to carry away excavated material, the fact that he has the permission of the company does not entitle him to use the tracks so as to injure private property along the route.

3. SAME.

A city made a contract for the construction of a reservoir on the site of an old park. The contractor used an abandoned railroad track, which had formerly run to the park, and a temporary track which he built on his own land, over which to carry away excavated material. Held, that by authorizing the improvement the legislature did not contemplate the carrying of excavated material by the route selected, or intend to subordinate private interests so as to give the contractor the right to carry away such material in a manner injurious to private property.

Action by William Bohnsack against John B. McDonald for an injunction. Judgment for plaintiff.

Niles & Johnson, for plaintiff.

James A. Dunn (William C. Trull, of counsel), for defendant.

MATTICE, J. The plaintiff owns and occupies as a dwelling a two-story frame house, situated on Hull avenue, in the city of New York. It is bounded on the south by lands of the Jerome Park Railroad Company. The defendant is the owner or occupant of several building lots situated in the vicinity, and near the plaintiff's lot. Both the plaintiff and defendant derived title from the same grantor. In their respective deeds appears the following covenant: "And the party of the second part for himself, his heirs, executors, administrators, and assigns, hereby covenants to and with the party of the

first part, his heirs and assigns, that he or they will not carry on, or permit to be carried on, upon said premises any noxious, offensive, or dangerous trade or business." · It is admitted by the defendant that the plaintiff is privy to such covenant. There is no contention over the right of the plaintiff to avail himself of the benefit of this covenant in a proper case. About the 23d day of August, 1895, the defendant entered into a contract with the aqueduct commissioners of the city of New York to construct a reservoir on the site of the old Jerome Park, for supplying water to the inhabitants of the boroughs of Manhattan and the Bronx in the city of New York. By the terms of the contract the work was to be completed on or before November 1, 1902. The contract also contained certain provisions relating to an extension of time on the part of the commissioners for the completion of the work. It appears from the testimony that at least five years will be required to complete the work. Under the contract the defendant was to provide a place of deposit for the material excavated, and remove the same to such place of deposit. The manner of removal of material to place of deposit was left entirely with the contractor. The reservoir, when completed, will cover about 300 acres, and involves the excavation of about 7,000,000 yards of solid material, which, when excavated, will, for the purposes of removal, be about 9,000,000 yards. The defendant secured a place for a dump upon low lands near Long Island Sound. He then constructed a temporary railroad track from the dump across his lands, before referred to, to the track of the Jerome Park Railroad. This temporary railroad track connects with the Jerome Park Railroad track in or near said Hull avenue and about 150 feet from the house of the plaintiff. The track of the Jerome Park Railroad extends from this point of intersection along the southerly side of the plaintiff's said residence, and about 17 feet therefrom, to the Jerome Park site. The Jerome Park Railroad Company is a corporation formed about the year 1880, under the provisions of chapter 606 of the Laws of 1875. This railroad had been used for the purpose of carrying passengers to Jerome Park during the summer months. It was so used when the plaintiff built his said house. The use of this railroad has been discontinued by the Jerome Park Railroad Company. The construction of the reservoir as a public work is required to be done by contract, and is authorized by legislative authority. The defendant, for the purpose of disposing of the excavated material, uses flat and dump cars drawn by steam engines from the site of the reservoir over the tracks of the Jerome Park Railroad Company to its intersection with the temporary railroad, thence over the temporary railroad to the dumping ground. These cars are heavily loaded, and run with considerable speed and frequency from early in the morning until night. It would be almost an impossibility to remove the excavated material except by means of cars and steam engines. No other way is practical. This route is the most feasible one that the defendant could adopt, but it is not the only one by which he could have removed the excavated material. The running of these cars greatly annoys the plaintiff, and injures his said property. It causes the building to vibrate, is attended with noise, and smoke and cinders are blown

upon his premises and in the house when the windows and doors are open, making it necessary to keep these openings closed during hot weather. Much of the injury is caused while the loaded cars are running by the house on the track of the old Jerome Park Railroad, yet some of it is caused by running on the temporary railroad over the lands of the defendant which are subject to the restrictive covenant. The action is brought to restrain the defendant from operating this road over the lands covered by the restrictive covenant, upon the ground that such operation is a violation of the covenant, in that it is carrying on a trade or business upon such lands that is noxious, offensive, or dangerous.

If the manner in which the defendant uses the land thus restricted is not the carrying on of trade or business on those lands, then the plaintiff is not entitled to maintain this action based upon such restrictive covenant. I do not think the restrictive covenant is broad enough to prohibit the use of the premises as a way over which to pass and repass. The language of the covenant, to wit, "will not carry on or permit to be carried on upon said premises any noxious, offensive, or dangerous trade or business," indicates that it was the intent of the grantor to prohibit the establishment on the premises of a trade to be thereon conducted and carried on which would be noxious, offensive, or dangerous to other grantees in that vicinity. The meaning of the word "business," while very broad and comprehensive in its general sense, must be limited when used in connection with the word "trade." Wakefield v. Fargo, 90 N. Y. 216; Hickey v. Taaffe, 99 N. Y. 209, 1 N. E. 685; Pardee's Appeal, 100 Pa. St. 412. It appears from the evidence that this is a residential portion of the city. All of the buildings in that vicinity are, in the main, small residences. There are also many vacant lots interspersed among them. It was probably the design of the grantor to prevent the location upon any of these lands of any trade or business that would be noxious or offensive to the residents of that locality. It was not intended by the covenant to prevent owners of vacant lots from passing and repassing over them in connection with a trade or business operated or carried on elsewhere. If the manner of passing and re-passing by the owner over his land constituted a nuisance, those injured thereby would have an ample remedy independent of the covenant. It was not the design of the covenant to protect the plaintiff from every form of nuisance, but only from the establishment of a trade or business to be conducted on the land which would be offensive, noxious, or dangerous. Plaintiff, therefore, cannot maintain this action by reason of the restrictive covenant in the deeds, for no violation thereof is shown.

I think, however, that the complaint is broad enough, and the proof sufficient, to entitle the plaintiff to relief by reason of the existence of a nuisance, independent of the restrictive covenant. The defendant had no right to operate this road in a manner to injure the property of the plaintiff. Assuming that the defendant obtained permission of the Jerome Park Railroad Company to use its tracks, yet he did not succeed to the rights of the company, or become a common carrier, or become amenable to the laws relating to railroads, or enti-

tled to the rights or privileges of a railroad corporation. Neither did the public character of the work he was performing exempt him from liability. To make the rights of the plaintiff subservient to the public, it would be necessary to hold that the legislature intended that this particular route should be used for the purpose of carrying away the excavated material. Such contention cannot be sustained. Neither can it be contended that the legislature intended to subordinate private interests along any route which might be selected by the contractor for such purpose. Consequential damages are withheld only in cases where it appears that the legislature expressly or by clear implication sanctioned the doing of the very act complained of. None of the cases go further. Hill v. City of New York, 139 N. Y. 495, 34 N. E. 1090; Cogswell v. Railroad Co., 103 N. Y. 10, 8 N. E. 537; Atwater v. Village of Canandaigua, 124 N. Y. 602, 27 N. E. 385; Benner v. Dredging Co., 134 N. Y. 156, 31 N. E. 328; Lester v. Mayor, etc. (Sup.) 29 N. Y. Supp. 1000; Morton v. City of New York, 65 Hun, 32, 19 N. Y. Supp. 603. The case last cited was decided not alone upon the theory that the structure was permanent, and not temporary, but because the legislature did not contemplate the doing of the particular act complained of. Van Brunt, P. J., writing the opinion of the court, says, on page 35, 65 Hun, and page 605, 19 N. Y. Supp.:

"It seems to us it would be a great stretch of language to hold that, because the legislature authorized the laying of mains, and the erection of such structures and fixtures as the commissioner might deem necessary to deliver water at higher levels, that he therefore had a right to maintain any nuisance in any part of the city of New York which he might deem necessary."

It might be said with equal force that it will not do to hold that, because the legislature authorized the city to construct a reservoir on the site of Jerome Park, the contractor would have the right to select a route in any part of the city to cart away excavated material, regardless of injury to private property. I think it is quite clear, under all of the authorities, that the defendant cannot shield himself under a claim that the exercise of legislative power has operated to protect him in the doing of the acts complained of by plaintiff.

The plaintiff is therefore entitled to a judgment against the defendant restraining the further commission of the acts complained of, together with the costs of the action, and $150 damages already suffered by the plaintiff.

The judgment must also provide that, in case the defendant shall, within 20 days after the entry of judgment, make, execute, and deliver to the plaintiff a good and sufficient bond, with sureties, to be approved by a justice of this court, conditioned that he will pay the plaintiff $75 for each and every year that he shall hereafter operate the road for the purpose of carrying away such excavated material, then that part of the judgment restraining the defendant shall cease to be operative.

Counsel for plaintiff will prepare formal decision, which may be settled on five days' notice.