## ANDERSON v. FARMERS' LOAN & TRUST CO.

Circuit Court of Appeals, Second Circuit. March 13, 1917.)

No. 148.

1. BANKS AND BANKING ⬮119—DEPOSITS—RIGHTS OF DEPOSITORS.

Deposits are not the property of the depositors, but of the bank receiving them; the relation of a bank and its depositors being that of a debtor and creditor, so that deposits and investments are equally assets of the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 289–292.]

2. INTERNAL REVENUE ⬮9—TAXATION—LIABILITY OF BANK.

War Revenue Act Oct. 22, 1914, c. 331, § 3, subd. 1, 38 Stat. 745, declares that bankers shall pay $1 for each $1,000 of capital used or employed, in estimating capital and surplus undivided profits shall be included, the amount of such annual tax being computed on the basis of the capital and undivided profits for the preceding year, and that every person, firm, or company, and every incorporated or other bank, having a place of business where credits are opened by the deposit of money or currency, subject to be paid or remitted upon draft, check, or order, or where money is loaned, shall be deemed a banker. A trust company, chartered to do a banking as well as a trust company business, which was authorized to discount commercial paper and accept drafts, and which held investments to an amount exceeding its capital, surplus, and undivided profits, opened a so-called capital investment account, to which bonds and mortgages were debited to an amount exceeding the capital, surplus and undivided profits. The trust company, while doing a trust company business, also did a considerable banking business. *Held*, that when a trust company is organized, obtains subscription for capital stock, and then opens its doors and begins business, its assets comprise all its property, and it is liable for taxation upon that portion of its capital and surplus actually employed in the banking business, regardless of its artificial methods of designating the employment of such property.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 13–28.]

3. INTERNAL REVENUE ⬮25—TAXATION—ASSESSMENT.

The collector of internal revenue, having been informed by the officers of a trust company that it was engaged in a banking business, may, without requiring a further return, when the one made by officers failed to disclose the amount of the company's capital and surplus used in the banking business, proceed in accordance with Rev. St. § 3176 (Comp. St. 1916, § 5899), to assess the tax imposed on such property by War Revenue Act 1914, § 3, subd. 1.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 72, 73.]

4. INTERNAL REVENUE ⬮25—ASSESSMENTS—VALIDITY.

Though the return did not furnish a basis for the assessment, the collector's assessment against a trust company engaged in the banking business under War Revenue Act 1914, § 3, subd. 1, is prima facie valid.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 72, 73.]

5. INTERNAL REVENUE ⬮38—ASSESSMENTS—VALIDITY.

For a trust company doing a banking business, assessed under War Revenue Act 1914, § 3, subd. 1, to recover the amount of an assessment on the ground that it was imposed on funds not used in the banking business, the trust company has the burden of showing that the tax was not in fact due. Proof of irregularity in the method of assessment is not sufficient.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 83, 84.]

---

⬮For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. INTERNAL REVENUE ⬅️6—TAXATION—ASSESSMENT.
  The tax imposed by War Revenue Act 1914, § 3, subd. 1, upon bankers for capital used in the banking business, is a franchise tax, and is not subject to attack on the ground that it is a direct tax not apportioned.

  [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. § 7.]

In Error to the District Court of the United States for the Southern District of New York.

Action by the Farmers' Loan & Trust Company against Charles W. Anderson, late collector of Internal Revenue, Second District of New York. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded.

The Farmers' Loan & Trust Company brought an action in the District Court for the Southern District of New York, against the former collector of internal revenue, to recover $4,809.34, the amount of taxes paid under protest. The taxes were imposed under the War Revenue Act, being chapter 331 of the Laws of 1914 (38 Stat. 745–764). Section 3, subdivision "First" provides:

"Bankers shall pay $1 for each $1,000 of capital used or employed, and in estimating capital, surplus and undivided profits shall be included. The amount of such annual tax shall in all cases be computed on the basis of the capital, surplus, and undivided profits for the preceding fiscal year. Every person, firm, or company, and every incorporated or other bank, having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check, or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange, or promissory notes, or where stocks, bonds, bullion, bills of exchange, or promissory notes are received for discount or sale, shall be a banker under this act. * * *"

The Farmers' Loan & Trust Company is authorized by the laws of New York under which it is chartered to do a banking business as well as a trust company business. While it is one of the principal companies in New York which acts as executor, trustee, guardian and depositary, it also does a very large banking business under the definition of a "banker" given in the section of the War Revenue Act above quoted. The trial judge directed a verdict for the Farmers' Loan & Trust Company at the trial for the recovery of the tax from the former collector to whom it was paid, and upon the judgment on that verdict a writ of error has been granted.

H. Snowden Marshall, U. S. Atty., of New York City (Gordon Auchincloss, of New York City, of counsel), for plaintiff in error.

Geller, Rolston & Horan, of New York City (Frederick Geller, James F. Horan, and Edward H. Blanc, all of New York City, of counsel), for defendant in error.

Before COXE and WARD, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

AUGUSTUS N. HAND, District Judge (after stating the facts as above). Three principal questions are involved: (1) Was any part of the capital, surplus or undivided profits of the trust company used or employed in banking? (2) If any part was so used or employed, did the Commissioner of Internal Revenue have any proof of that fact before him which could furnish a basis for a lawful tax? (3) If the Commissioner had no such proof, was the tax, even though in fact due, legally collectible?

[1, 2] If the first question is answered in the negative, manifestly no tax could have been imposed in any event. The trust company held investments to an amount exceeding the capital, surplus and undivided profits. While these investments changed from time to time, they were held for long periods, and assets of the amount indicated may fairly be said to have been regularly invested. In 1906 the trust company for the first time opened a so-called "capital investment account," to which bonds and mortgages were debited to an amount exceeding the capital, surplus and undivided profits. These mortgages appear to have been carried from the securities account and entered in this capital account in pencil.

We do not think that the possession of securities of a value exceeding the capital, surplus, and undivided profits is proof that no part of the capital, surplus, and undivided profits is used or employed in banking. Deposits are not the property of the depositors, but of the trust company. The relation of a bank and its depositors is that of debtor and creditor, so that the deposits and the investments are all equally assets of the bank. The claims of depositors are liabilities of the bank. The capital, surplus, and undivided profits are simply what may be left after the satisfaction of the liabilities to depositors and other creditors. The creditors may be paid out of any portion of the assets of the company, and the capital, surplus, and undivided profits represent a residue which, like the claims of creditors, may be made good out of any of the securities, cash, bills of exchange, promissory notes, or other resources of the bank, including its real estate. No segregation took place, and the attempted segregation was an artificial transaction that in our opinion had no reality. The statute upon any other theory becomes futile and meaningless, and enables any bank holding investments equivalent in value to its capital, surplus and undivided profits exempt from any franchise tax under the War Revenue Act.

Judge Wallace, writing for this court in the case of Leather Manufacturers' National Bank v. Treat, 128 Fed. 262, 62 C. C. A. 644, said that undivided profits were taxable as part of the surplus employed in the banking business under the provisions of the War Revenue Act of 1898 (Act June 13, 1898, c. 448, 30 Stat. 448), which taxed capital and surplus employed in banking, and remarked that:

"The argument for the plaintiff in error, if carried to its logical conclusion, would enable a banking corporation to escape the tax at its volition, merely by refraining from making any distinct appropriation of the undivided profits. The tax reaches whatever has become substantially a part of the capital of the corporation, without regard to bookkeeping. Upon the facts set forth in the complaint, there is nothing to distinguish the undivided profits in controversy from the fund which many banking associations carry for years under that name, and which, though not technically surplus or theoretically capital, are actually a part of the capital of the bank. There is nothing in the circumstance that they were considered by the bank as a fund applicable to extra dividends, and to unexpected losses, and to depreciation of assets, to distinguish such accumulations from the technical surplus fund of the bank."

Judge Lacombe, upon the trial of the cases of Central Trust Company v. Treat (C. C.) 171 Fed. 301, and Farmers' Loan & Trust Company v. Treat (C. C.) 171 Fed. 302, distinguished these cases from

the case of Leather Manufacturers' Bank v. Treat, supra, by saying that in that case the company—

"was a bank engaged solely in a banking business, and presumably all the property that it had was employed in such business. But in the case at bar the plaintiff is not a bank or banker, and, although it does some of the things enumerated in the section as indicative of such business, its principal business seems to be distinctively that of a trust company. It will be observed that the 'capital and surplus,' which is subjected to the tax, is that which is used or employed by the banker; i. e., in the banking business. The evidence shows that the entire amount of these undivided profits before, during, and at the end of the fiscal year were invested in municipal and railway bonds and in the stocks of corporations, and were not in any sense employed in the business of banking, although the ownership of this large amount of securities available to make good losses in any of the enterprises which the corporation was conducting naturally increased its credit generally."

Thus Judge Lacombe seems to have based his decision primarily on the ground that the Farmers' Loan & Trust Company's "principal business was distinctively that of a trust company," and upon a finding of fact that the capital and surplus were "invested in municipal and railway bonds and in the stocks of corporations, and were not in any sense employed in the business of banking." This finding was based upon an affidavit of the president of the trust company in which it was stated at folio 200 of the record on appeal to this court that:

"The entire capital and undivided profits of the said the Farmers' Loan & Trust Company are invested in real estate, bonds of the government of the United States and of the city of New York, state of New York."

Upon this record the judge writing the opinion of this court said that:

"The agreed statements show that the capital and surplus of both companies are permanently invested in stocks and bonds." Treat v. Farmers' Loan & Trust Co., 185 Fed. 760, 108 C. C. A. 98.

It is obvious that the trial judge in the present case was wholly controlled by what he conceived to be the rule laid down in Treat v. Farmers' Loan & Trust Company, supra. He said in answer to argument of counsel for the government:

"I am wholly persuaded that the ruling of the higher court was that for the purpose of avoiding the taxes under the act of 1898, it was enough if an amount of money, I care not where derived, equal to or greater than the aggregate of capital, surplus and undivided profits was kept permanently invested. * * *"

We do not think that the Treat Case justified this conclusion of the trial judge and regard the case of Canal & Banking Company v. New Orleans, 99 U. S. 97, 25 L. Ed. 409, as holding that no such application of investments to capital, surplus and undivided profits follows from the mere possession of them. In that case the Canal & Banking Company was assessed by the city of New Orleans for $700,000 as its capital, and the bank refused to pay the assessment, alleging that its capital, not invested in real estate, consisted of legal tender notes of the United States. The Supreme Court said:

"* * * There was no proof in the cause to establish the fact that these notes constituted the capital of the bank, any more than that any other equal

portion of its assets constituted such capital. The nominal capital of the bank was $1,000,000, and estimating its real estate at $200,000, the assessment was still $100,000 less than the balance of the nominal capital; and it was conceded that the bank had a large amount of assets independent of the currency in its possession. * * * Now, does it lie with the bank to put its finger on a particular item of the assets—its money on hand, for example (which appears to have consisted of legal tenders)—and say that this item, and no other item, constituted its capital at that time? Does this depend on the mere option of the bank? Why was not its cash on hand just as applicable to its deposits and other obligations as to its capital? Not a particle of proof was offered, and it is difficult to see how any proof could have been offered, to show that the cash exclusively constituted the capital."

See, to the same effect, People ex rel. Commercial Cable Co. v. Morgan, 178 N. Y. at page 440, 70 N. E. 967, 67 L. R. A. 960; State ex rel. Jacobs v. Assessor, 37 La. Ann. 851; Real Estate, Title Ins. & Tr. Co. v. Lederer (D. C.) 229 Fed. 799.

Both the banking powers and the varieties of banking business done by the Farmers' Loan & Trust Company have apparently increased since the decision was rendered in the Treat Case. Judge Ward, in the opinion of the Circuit Court of Appeals on the appeal from the decision of Judge Lacombe in that case, said;

"The only business the companies do as bankers within the definition of banking in the act is the opening of credits by deposits or collections of money and paying the same out on check, draft, or order, and the loaning of money on stocks, bonds, or secured paper."

By the amendment of 1914 trust companies were allowed, in addition to their former banking powers, to discount commercial paper and to accept drafts drawn upon them. The real distinction, however, which may be made between the case of Treat v. Farmers' Loan & Trust Company, 185 Fed. 760, 108 C. C. A. 98, and the case at bar, is that in the Treat Case the trial judge found as a fact that the capital and surplus were not employed in banking, but were permanently invested. In Leather Manufacturers' Bank v. Treat, supra, this court had reached an opposite conclusion in a case where the sole business was banking. The Farmers' Loan & Trust Company does a large trust business, the extent of which is not shown by the record. It also does a large banking business, the extent of which is at least partially shown. It would be possible to determine by further evidence the relative proportionate amounts of assets employed in banking and in trust business. If such a proportion were determined, and it appeared that one-half of the assets were employed in banking and the remaining one-half in trust business, it would seem to follow that one-half of the capital and surplus was employed in banking. The computation might be difficult, but it seems to us entirely practicable.

The capital, surplus, and undivided profits, which counsel for the defendant in error insists were not employed in banking, but were permanent investments, we regard as employed in all the business of the bank of every kind. They were available for any use, equally with all other assets of the company, and were therefore employed both in the banking and other business. And this is because the words "capital, surplus, and undivided profits" relate to no particular kind of property,

but are expressions describing the amount of the residue of the assets after the liabilities have been deducted.

The question will doubtless arise hereafter whether the so-called permanent investments of the plaintiff can be regarded as employed in banking. Counsel for the trust company urge that the case of Spreckels Sugar Refining Co. v. McClain, 192 U. S. 397, 24 Sup. Ct. 376, 48 L. Ed. 496, is conclusive that this is not the case. The Supreme Court there held that interest received by that company from its deposits and dividends received by it from securities of other companies which it owned were not taxable under the Spanish War Tax as gross receipts in the business of refining sugar. The court said:

"But, clearly, neither interest paid to the plaintiff on its deposits in bank, nor dividends received by it from investments in the stocks of other companies, were receipts in the business of refining sugar. The moneys deposited by the plaintiff in bank were, we assume, on this record, the profits it had earned in the business in which it was engaged. Profits did not necessarily remain in the business; and whether they would be divided among stockholders or be used in the further prosecution of the business was for the plaintiff to determine. They could have been used for purposes wholly distinct from the business of refining sugar. We are of opinion that the receipts by the plaintiff of interest on its bank deposits had no necessary relation to the business of refining sugar, but rested wholly upon some agreement or understanding between the bank and the depositor, which had no direct connection with that business. And the same thing may be said of plaintiff's investment of its moneys in the stocks of other companies. In the absence of any showing to the contrary, it must be assumed that the declaration or the receipt of dividends on such stocks was wholly apart from the particular business in which the holder of the stock was engaged."

The case at bar seems somewhat different. In the first place, it is doubtful if any such occasion for the existence of the investments appeared in the Spreckels Case as in the case of a banking institution where large reserves are so important to the conduct and success of business. These investments, as the undivided profits in the case of Leather Manufacturers' Bank v. Treat, supra, are all to be regarded as employed in the business of the company.

In the case at bar the tax is levied on capital employed in banking, and not upon income derived from the banking business. Assets may be employed in the business of banking, when dividends derived from them are not receipts from the banking business at all. In other words, the terms of the statute regulating the tax in the Spreckels Case were different from those in the act determining the tax for the case at bar. The Spreckels Case, therefore, never decided that the deposits and securities of that company were not employed in the business of refining sugar, but only held that income derived from those assets could not properly be regarded as coming within the definition of receipts from the business of refining sugar.

It is therefore a question of fact, to be determined at the trial, just how far the so-called permanent investments were employed in banking. We do not feel disposed to determine this as a matter of law, without having before us the respective requirements of the plaintiff's banking and trust business for such a character of securities. The nature of the employment of the company's real estate is also a question of fact. What proportionate amount is actually used for the

banking business and for the trust business? If a further proportionate amount is used merely for leasing purposes, is such an employment in a purely additional line of business, or is it only in the banking and trust business because a mere method of saving rental for those lines of business where the land was too valuable to justify a building to be occupied only for offices of the company itself?

We therefore do not intend to intimate that the trial court is not free to determine from the evidence offered how far the capital, surplus, and undivided profits are employed in banking. But the fact of employment or nonemployment is not to be determined by methods of bookkeeping, but by real transactions. We have suggested certain presumptions apparently arising from the record at the former trial to assist the court in dealing with the proof which is likely to be hereafter offered. At the risk of some reiteration, the foregoing views may be summarized as follows:

When a trust company is organized, obtains subscriptions for capital stock, and then opens its doors, begins business, and receives various deposits, its assets comprise all its property of every kind. Some of this property it will invest in mortgages, bonds and stocks; other portions it will loan; still other portions, constituting its cash on hand, it will hold to be drawn against by its customers; other portions of its funds will be used to pay clerks who are engaged solely in the trust, and not in the banking, end of the business. We do not regard any specific assets as constituting capital of the company. The capital, and in the same way the surplus and undivided profits, are the residue left after paying the obligations of the bank to its depositors, and any other indebtedness it may have. These claims may be satisfied out of any property, and the balance remaining, which is the capital, surplus and undivided profits, is to be imputed equally to all kinds of property which the trust company may possess. The proper way, therefore, to determine what part of the capital, surplus and undivided profits is employed in banking, is to find out what part of the total assets is so employed; when that is done, the same proportion of the capital, surplus, and undivided profits must be thus employed. Any other construction of the act seems to us unreasonable, and to involve the almost inevitable result that trust companies, which are close competitors of the national banks (at times outstripping them in banking business), will be found to be entirely free from a tax which the national banks will have to pay. If investments in securities are held for a long time, and exceed in value the capital, and a designation of these investments as investments of capital can be regarded as indicating that the trust company employs none of its capital in banking, almost every trust company will escape the tax.

[3] The question remains whether the Commissioner of Internal Revenue was shown to have had anything before him which justified the tax, and, if not, whether the tax was legally collectible even though not in fact properly assessed. The Commissioner had before him in the letter of Mr. Sinsel of January 15, 1915 (Plaintiff's Exhibit E), the fact that the trust company did a general banking business, and in the letter of the secretary of the company, Mr. A. V. Heely, dated November 30, 1914 (Plaintiff's Exhibit 2), the monthly average of its capital, surplus, and undivided profits. These letters each stated the

claim of the company that the capital, surplus, and undivided profits were not employed in banking. This partial information justified the Commissioner in concluding that the company was engaged in banking, and that it was taxable to some extent, but certainly furnished no sufficient basis for the assessment fixed, or the tax levied. The letter of Mr. Heely stated that the company was engaged in the business of a trust company, and not only was this statement not contradicted by the letter of Sinsel we have referred to, but it is notoriously the fact that such is the case. The evidence before the Commissioner, therefore, indicated that the capital, surplus, and undivided profits were employed both in the business of banking and trusts. In what relative proportions did not appear. The Commissioner might have required a further return, but we do not think that he was obliged to do this, and might make the assessment upon information derived from any source. Revised Statutes U. S. § 3176 (Comp. St. 1916, § 5899).

[4] This being the case, were the acts of the collector in collecting the tax wholly illegal? We think it settled by the decisions that the assessment was not made without jurisdiction, and was prima facie valid. United States v. Rindskopf, 105 U. S. 418, 26 L. Ed. 1131; Clinkenbeard v. United States, 21 Wall. 65, 22 L. Ed. 477. The fact that the Commissioner might not have had sufficient evidence to justify his computation did not render it void. We think it was correctly said in Schafer v. Craft (D. C.) 144 Fed. 907 (153 Fed. 175, 82 C. C. A. 349, on appeal) that:

"* * * Upon the most familiar principles one cannot by suit recover any taxes once paid, which in fact were due even though the exact manner of their collection was not authorized."

See Dollar Savings Bank v. United States, 19 Wall. 227, 22 L. Ed. 80; Haffin v. Mason, 15 Wall. 671, 21 L. Ed. 196; Northern Pacific R. R. v. Clark, 153 U. S. 252, 14 Sup. Ct. 809, 38 L. Ed. 706.

[5] In order to recover any part of the taxes, the Farmers' Loan & Trust Company should have shown just what portion of the tax was levied upon capital, surplus, and undivided profits which were not used or employed in banking. It was not sufficient to show that the Commissioner proceeded without proper evidence, or otherwise erroneously, and then to rest; but the company had the burden of establishing by a preponderance of the evidence that the tax collected, or some part of it, was not due.

[6] The contention that the tax cannot be lawfully imposed under the federal Constitution, because it is a direct tax and was not apportioned, is without merit. The tax is clearly upon a franchise to conduct the business of banking, and by familiar authority is lawful. Patton v. Brady, 184 U. S. 608, 22 Sup. Ct. 493, 46 L. Ed. 713; Thomas v. United States, 192 U. S. 363, 24 Sup. Ct. 305, 48 L. Ed. 481; Flint v. Stone Tracy Co., 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312.

The judgment must be reversed, and the case remanded for a new trial.

WARD, Circuit Judge (concurring). As the tax imposed is only upon so much of the capital, surplus, and undivided profits as are

used in the banking business, Congress plainly contemplated that less than the aggregate of these elements might be so used. If the intention had been to tax all the company's assets which were so used, it would have been easy to say so. The addition of the words "surplus and undivided profits" to the word "capital" shows that Congress was confining the tax to a specified portion of the company's assets. Obviously when a corporation, as in the present case, does other business in addition to banking, the whole capital, surplus, and undivided profits cannot be used in each. How much, if any, is used, must be a subject for proof. This is plainly stated in Canal Co. v. New Orleans, 99 U. S. 97, 25 L. Ed. 409, where, however, the court held that no such proof had been offered. Trust companies have a large and quick asset in the shape of their depositors' accounts, which are no part of their capital, surplus, or undivided earnings. When the only banking done is, as in Central Trust Co. v. Treat (C. C.) 171 Fed. 301, the opening of deposit accounts and lending of money on collateral, it would be quite natural for the company, in doing the business, to resort first to deposited funds, and perhaps to restrict the business to those funds. This is true in a less degree when the banking powers are more extensive. While mere entries in the company's books might not be decisive, still they may constitute part of the proof, and resort should not be had to presumptions until positive proof fail.