## UNITED STATES v. REITMEYER et al.

(District Court, E. D. Louisiana. March 10, 1926.)

### No. 18083.

**1. Internal revenue ⊜═28.**

Tax may be assumed valid, and taxpayer has burden of proving otherwise.

**2. Internal revenue ⊜═7.**

Reasonableness of salaries of corporate officers, not method of fixing, determines deductibility thereof, in calculating net income under Revenue Act 1918, § 234, subd. a (1), being Comp. St. Ann. Supp. 1919, § 6336⅛pp.

**3. Evidence ⊜═183(4)—Receipt of secondary evidence of corporate directors' action respecting officers' salaries deductible in determining net income held warranted, in view of evidence of loss of corporate minute book (Revenue Act 1918, § 234, subd. a [1], being Comp. St. Ann. Supp. 1919, § 6336⅛pp).**

Evidence of loss of corporate minute book and search therefor, and counsel's assurance that careful search had been made, *held* to justify receipt of secondary evidence of directors' action respecting officers' salaries, sought to be deducted, in determining net income under Revenue Act 1918, § 234, subd. a (1), being Comp. St. Ann. Supp. 1919, § 6336⅛pp.

**4. Internal revenue ☞7—Salaries of corporate officers held reasonable, and deductible in determining net income, though possibly fixed after consideration of stock owned by each officer (Revenue Act 1918, § 234, subd. a [1], being Comp. St. Ann. Supp. 1919, § 6336⅛pp).**

Salaries paid officers of wholesale liquor corporation *held* reasonable, and paid for actual services, rather than as stock bonus, and properly deductible in determining net income, under Revenue Act 1918, § 234, subd. a (1), being Comp. St. Ann. Supp. 1919, § 6336⅛pp, notwithstanding directors may have considered stock owned by each officer in fixing his salary.

In Equity. Suit by the United States against George R. Reitmeyer and others. Bill dismissed.

Wayne G. Borah, U. S. Atty., of New Orleans, La., A. W. Gregg, Solicitor of Internal Revenue, and Frederick W. Dewart, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C.

HALE, District Judge. In this equity suit the United States government is proceeding against George R. Reitmeyer, Benjamin Leiser, Fannie C. Leiser, Edmund Harries, and Emma D. Harries, stockholders in E. C. Villere & Co., a corporation organized under Louisiana law, on March 8, 1908, and having its place of business in New Orleans, La., from its organization until its dissolution, August 1, 1919.

The action is brought to recover taxes in the sum of $8,402.94 for the year 1918, duly assessed against the corporation of E. C. Villere & Co., Limited.

The record shows that E. C. Villere & Co., Limited, was a corporation engaged in the wholesale and retail liquor business at New Orleans, La. In the spring of 1916, the defendants Leiser, Harries, and Reitmeyer, with their wives, purchased 535 shares of the 540 shares issued and outstanding. Five shares were the property of John Goertz, an employee of the company, but not an officer.

For the year 1916, the three officers, Leiser, president, Harries, secretary, treasurer, and general manager, and Reitmeyer, vice president, received salaries presumably at the rate of $3,000 a year. For the year 1917, each one of the three officers was paid a salary of $4,450.

The corporation dissolved on August 1, 1919, and thereafter paid liquidating dividends to the stockholders in proportion to their stockholdings exceeding $50,000.

[1] The validity of the tax of 1918 is the only question before me. It may be assumed, for the purposes of the case, that the assessment of the taxes by the officials of the United States, charged with the duty of assessment, is prima facie valid, and that the burden is on the taxpayer to establish, by a fair preponderance of evidence, that the assessment is not correct, and that the tax is not a valid tax. Anderson v. Farmers' Loan & Trust Co., 241 F. 322, 329, 154 C. C. A. 202; Germantown Trust Co. v. Lederer (C. C. A.) 263 F. 672, 676.

The Revenue Act of 1918, approved February 24, 1919, is the law regulating taxes for the year 1918. It provides for deductions to corporations as follows:

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered. * * * *"

Comp. St. Ann. Supp. 1919, § 6336⅛pp. [2] It is clear, then, that a reasonable compensation to officers of a corporation are necessary expenses in carrying on a business. The method of fixing such compensation is not decisive as to its deductibility. Reasonableness must be the controlling test of deductibility.

[3, 4] The government attacks the adequacy of the proof in reference to the action of the directors in fixing the salaries of its officers for the year 1918. It is shown that the minute book of the corporation was lost; that it was last seen in the hands of Mr. Kahn, a former attorney of the company; and that due search had been made for it. In addition to the evidence of the loss of the minute book, and of the search for it, the learned counsel for defendants, in open court, gave me his assurance that all possible search had been made for the book, and that, at my request, he had caused to be made a fresh and careful search on the day of the trial of the case. The proofs were, in my opinion, sufficient to justify the introduction of secondary evidence of the action of the directors.

The proofs brought before me show that, at the meeting held in July, Reitmeyer complained that he was not getting enough salary; "that everybody else was getting more money, and the cost of living was going up extensively"; that the directors said they would see how they came out at the end of the year, and raise salaries accordingly; that the business had been more successful during the employment of Mr. Leiser and Mr.

Harries than it had been before their coming, and that the matter then went over until December; that at the meeting at the end of the year the board met and voted bonuses to the officers and other employees of the company; that they then increased the salary of Mr. Leiser to $10,240, Mr. Harries to $10,260, and Mr. Reitmeyer to $8,200. It appears from the books of the company that these salaries were actually paid.

There is evidence tending to show that, whether the amount paid may be called salary or bonus, there was some reference in each salary to the amount of stock held by the officer receiving it; and it is urged by the government that the increase in fact was a 20 per cent. dividend; that, while called a bonus or salary, and sought to be deducted under the provision of deduction for salaries, it was, in fact, a dividend, and was so intended, and that it was not deductible under the guise of salaries.

While it may be true that the amount of the stock held by each officer was considered, it also appears, by affirmative testimony, that the services of the several officers were discussed as a reason for the payment of the so-called bonus or salary, and that the question of the success of the company was also brought in question; that the gross sales for 1918 were shown to be $302,447; that the profits of the business, exclusive of salaries, had risen from $34,000 in 1917 to $45,000 in 1918; that salaries in the wholesale liquor trade were higher in 1918; that the business was in a desperate condition; and that a great amount of labor devolved upon the officers of the company at that time.

Testimony was brought before me of business men in New Orleans having a knowledge of salaries paid in 1917 and 1918 by mercantile houses in New Orleans, and by companies doing a similar business to that of the defendants. This testimony came from apparently impartial sources. It was to the effect that salaries in mercantile pursuits in New Orleans increased from 1917 to 1918 about 100%, and that the salaries of the officers in question were "about the same thing" as the salaries of other parties in other lines of business under similar conditions. From such testimony it was also shown that a fair and reasonable salary for such services as were rendered by the officers in question was around $10,000.

The witnesses were subjected to rigid cross-examination and to questions by the court. While the evidence on this subject was not of great volume, it was of probative value, and it was not contradicted by any witness produced by the government.

Clearly I cannot dismiss from my mind these proofs with reference to the reasonableness of the amounts paid, whether called salary or bonus. I am constrained to find that they were paid with reference to the amount of business of the company and to the amount of work done by the several officers. The officers were stockholders, and in the fixing of the amount of the salaries some attention was paid to the amount of stock held by each. This fact makes it incumbent upon me to examine with great care whether the amounts so paid were reasonable. It would clearly impose a hardship on the officers of the company if I should hold that, because they are stockholders, they cannot receive reasonable salaries, but must be satisfied with taking the dividends on their stock.

In United States v. Philadelphia Knitting Mills Co., 273 F. 657, 15 A. L. R. 1313, the Circuit Court of Appeals for the Third Circuit had before it a case in which the question was presented whether the salary of its president, of $20,000, was a reasonable salary. It was shown that the president and his daughter owned nearly all of the stock of the corporation; that in the conduct of the business of the corporation the president did almost nothing, but that the vice president did "almost everything in the management of the company's affairs." In speaking for the court, Judge Woolley says:

"Just how much of the annual compensation paid Bilyeu [the president] was salary and how much was profits would not be left for the jury to conjecture, for there was evidence of the amount of salaries paid presidents of like concerns of relative output and earnings. This evidence was in no sense conclusive, but it was admissible and it had probative value. There was, in addition, evidence of the salary which the defendant corporation itself paid Bilyeu, its president, before it was increased, without any reason, except that Bilyeu thought his salary (for decreasing services) should keep apace with Moller's salary [the vice president] for steadily increasing services.

"This evidence was, to be sure, only prima facie, and might have been overturned by evidence produced by the defendant corporation, showing that its president, because of his position in the trade, his connection with the banks, or otherwise, rendered services to the corporation on which the board of directors had exercised a bona fide discretion in voting him this substantial salary. But, until some evidence of this character was produced

by the defendant, we think the evidence for the government was sufficient to sustain a finding by fair-minded men that a part, and a definite part, of the compensation paid Bilyeu as salary was profits distributed to him by reason of his stockholding."

In the case before me, as I have already noted, there was evidence, produced in open court by the defendants, and uncontradicted by any testimony offered by the government, that the salaries paid to the several officers in 1918 were reasonable salaries, and in line with that paid officers in other mercantile pursuits. There was affirmative testimony tending to show that the board of directors exercised a bona fide discretion in giving their officers a fair salary, considering the desperate condition of the business, the amount of work they had done during the year, and the amount of earnings of the corporation during the year. These salaries, I think, cannot be said to be any less reasonable from the fact that the officers are shown to have been stockholders.

The case of Jacobs & Davies v. Anderson (Circuit Court of Appeals, Second Circuit) 228 F. 505–506, 143 C. C. A. 87, 88, is brought to my attention by the learned counsel for the government. In that case the Circuit Court of Appeals for the Second Circuit found:

"That the parties by a series of agreements divided everything received as profits among themselves as though it were a case of partnership and not of corporation assets. They called these sums 'compensation,' but the court held that they must be treated as income of the corporation. To enable the company to deduct these amounts it must appear that they were paid as salaries for services actually rendered. If the payments were based upon the stockholdings of the parties, as we think they were, they cannot be considered as expenses of administration. They were not compensation, because the salaries of both the parties are fully provided for in the agreement of April, 1909. It seems plain that they were profits of the business and as such were subject to the tax. Their payment did not depend on the services rendered."

In the instant case it cannot be said that the payment of the salaries did not depend upon services rendered, and there is much evidence brought before me that such salaries were reasonable. It is not true in the case at bar that the salaries were paid to officers who, like the president of the Philadelphia Knitting Mills Company, did nothing, or very little, to earn his salary. In the year of desperation of the company's business, the officers did actual and important services for the company.

The learned counsel for the government has moved that the court find "that the amount of ten thousand eight hundred (10,800) dollars paid to the various officers of Villere & Co. was 20 per cent. dividend on the stockholdings of the stockholders of the company, and is not entitled to be deducted as an expense of the company for the year 1918 in its income tax return for that year." I decline to make this finding. I find that while, in fixing the salaries in question, the amount of stock held by each officer may have been considered, it was not the vital consideration in fixing the salaries. I find that the defendants have shown by a fair preponderance of the evidence that the salaries in question were reasonable salaries, under all the circumstances of the case, and are entitled to be deducted as an expense of the company for the year 1918 in its income tax return for that year.

A decree may be presented, dismissing the plaintiff's bill of complaint, but without costs.