## HUGHES v. COMMISSIONER OF INTERNAL REVENUE.
### No. 144.

Circuit Court of Appeals, Tenth Circuit.
Feb. 5, 1930.

Gerald Hughes, of Denver, Colo. (C. C. Dorsey and Berrien Hughes, both· of Denver, Colo., on the brief), for petitioner.

Prew Savoy, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Sewall Key, and Randolph C. Shaw, Sp. Assts. to the Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for respondent.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The petitioner claimed a credit, in his 1922 income tax return, for a loss of $32,-493.19 carried over from· 1921 under the provisions of section 204 of the Revenue Act of 1921 (42 Stat. 231). The Commissioner figured the allowable· credit to be $2,029.88, and notified the petitioner of a deficiency assessment in the sum of $11,799.97. The Board of Tax Appeals sustained the Commissioner, and the case is here for review.

The facts are found by the Board, and are not in dispute. During the year 1921, the petitioner was engaged in four pursuits for the purpose of a profit. They were:

(1) Member of law firm of Hughes & Dorsey, to which he devoted 50 per cent. of his time; profit in 1921, $36,672.94.

(2) Personal investments, to which he devoted 26 per cent. of his time; loss in 1921, $57,551.50.

(3) Member of firm of Boettcher, Porter & Co., investment banking, to which he devoted 20 per cent. of his time; loss in 1921, $48,091.20.

(4) Member of executive committee of two banks, to which he devoted 4 per cent. of his time; salaries during 1921, $3,958.32.

In addition, he received interest and dividends, from the investment firm and his personal investments, of $36,523.39.

The petitioner considered that the only "trade or business" he was engaged in was the investment banking business, and computed the "net loss" that could be carried over into 1922 as prescribed by the formula in that section, as follows:

| | |
|---|---|
| Deductions allowed by· 214–a (consisting of losses in his personal business, interest paid, taxes and contributions).. | $61,828.14 |
| From this sum he took away— | |
| (a) His gross income (the excess of his salaries, law income, dividends 'and interest, over his loss in the invest-. ment banking business) ...... | $29,063.45 |
| (b) ·Certain tax free interest ... | 271.50 |
| (c) The excess of the losses he suffered in his unrelated personal business (excluding taxes, contributions and interest) over his income from his unrelated law business, salaries and dividends ......... | None 29,334.95 |
| Leaving a net loss to be carried over of | $32,493.19 |

The Commissioner's computation differed only in that in (c) above, the Commissioner treated the income from the law firm and the salaries from the banks, as profits derived from a "trade or business." This resulted in a deduction under (c) above, of $30,463.31, the taxation of which amount is the controversy between the parties.

It is therefore apparent that the Commissioner has ruled that the income from three of the petitioner's four pursuits (from his law practice, his partnership investment business, and the salaries from the banks) grew out of a "trade or business," while the losses suffered by him from the fourth, his personal investments, were not incurred in "trade or business." The petitioner contends he was engaged in but one "trade or business," that of investment banking; but, in any event, if the income from his law practice and his salaries is so classified, then the losses he suffered in his personal investments should be similarly classified, which would result in about the same loss as he claimed.

■ The Board of Tax Appeals held that the question of what was or was not a trade or business was immaterial, upon the authority of its prior decision in Re H. J. Schlesinger, 5 B. T. A. 943, and denied the petitioner relief. But, as we read the Schlesinger decision, if it were applied to the case at bar, the petitioner would have been entitled to practically all the relief he asks. The respondent disclaims any reliance upon the decision of the Board in the instant case, so it need not be further discussed. Neither does the respondent now rely upon the computation of the Commissioner; but counsel for the respondent now states that, by a correct application of the formula of section 204, it is found that the petitioner's profits from the law business and salaries were $40,631.26; his net loss in the investment banking was $38,656.00; the loss in personal investments is disregarded, with a result that counsel claims no loss should have been carried over. We are not asked, on this account, to increase the deficiency assessment, but we are asked to apply the statute to the undisputed facts, without reference to the theories of the Commissioner or the Board. The petitioner likewise, by a general assignment of error, brings before us the case as a whole. The statute requires us "to affirm, or, if the decision of the board is not in accordance with law, to modify or reverse the decision of the board, with or without remanding the case for a rehearing, as justice may require." USCA tit. 26, § 1226; Old Colony Trust Co. v. Com'r Int. Rev., 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918. Section 269 of the Judicial Code (USCA tit. 28, § 391) likewise directs that judgment shall be entered "after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties." Or, as stated by counsel for the government, "The correct amount of the deficiency, however, is the controlling question, and not the method of arriving at it." Atlanta Casket Co. v. Rose (5 C. C. A.) 22 F. (2d) 800; Anderson v. Farmers' Loan & Trust Co. (2 C. C. A.) 241 F. 322; Lewis-Hall Iron Works v. Blair, 57 App. D. C. 364, 23 F.(2d) 972.

■ The underlying question in the case is the meaning of the phrase "trade or business" as used in section 204(a) of the Revenue Act of 1921 (42 Stat. 231), which reads as follows:

"That as used in this section the term 'net loss' means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business) ; and when so resulting means the excess of the deductions allowed by section 214 or 234, as the case may be, over the sum of the following: (1) the gross income of the taxpayer for the taxable year, (2) the amount by which the interest received free from taxation under this title exceeds so much of the interest paid or accrued within the taxable year on indebtedness as is not permitted to be deducted by paragraph (2) of subdivision (a) of section 214, or by paragraph (2) of subdivision (a) of section 234, (3) the amount by which the deductible losses not sustained in such trade or business exceed the taxable gains or profits not derived from such trade or business, (4) amounts received as dividends and allowed as a deduction under paragraph (6) of subdivision (a) of section 234, and (5) so much of the depletion deduction allowed with respect to any mine, oil or gas well as is based upon discovery value in lieu of cost."

We are here concerned only with the meaning of this phrase as used in this section. The same phrase, in other statutes, or in other sections, in a different context, and for a different purpose, may or may not be helpful. The intent of Congress, in enacting the section in question, is the goal of the inquiry; if doubt exists, courts should look

to the situation that confronted Congress, and the mischief the statute was designed to undo. Ozawa v. United States, 260 U. S. 178, 195, 43 S. Ct. 65, 67 L. Ed. 199; Holy Trinity Church v. United States, 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226; Harper v. Victor (8 C. C. A.) 212 F. 903; United States v. Ninety-Nine Diamonds (8 C. C. A.) 139 F. 961, 2 L. R. A. (N. S.) 185, and authorities therein cited by Judge Sanborn.

This section, in somewhat different language, was first enacted in 1918. The mischief it was aimed at is a matter of common knowledge. Merchants and manufacturers, and other taxpayers employing capital in their pursuits, had paid large taxes in preceding years on paper profits. Their shelves and warehouses bulged with inventories whose values had increased fabulously during the inflation period. The war had ended; deflation was forecast; war trade was at an end. A class of taxpayers had paid taxes on incomes reflected by inventories, an income not in fact realized. There was no one to recoup them the losses caused by the shrink in the value of their assets. This section was designed to permit such taxpayers to carry over such losses into the two succeeding years. In the report of the 1918 law to the Senate, the Committee, speaking of this section, said:

"One of the most important provisions inserted by the committee is quite new to our tax laws. At the present time no recognition is given to net losses; that is, if in any year the losses and expenses of a taxpayer exceed his gross income the excess (or in other words, the net loss) cannot be carried over into the next year. For purposes of taxation the settlement must be made upon the basis of each year's business by itself. The chief merit of the present plan is its simplicity of administration. But it does not adequately recognize the exigencies of business, and, under our present high rates of taxation, may often result in grave injustice."

Montgomery, in his work on Income Tax Procedure (1922 Ed.), at page 1021, says of this section:

"The radical changes expected in business conditions as a result of the cessation of the war made it seem imperative that losses arising from readjustments of inventories, which might occur within a few months thereafter should be spaced over a longer period of time. Similar conditions existed in case of losses arising from sales or depreciation of plant and equipment acquired for war pur-

poses. To meet those difficulties the 1918 law provided certain relief measures designed to assist in the re-establishment of normal conditions."

So much for the purpose back of the law. Turning now to the statute itself, the first thing noticed is an evident purpose of Congress to restrict its application to a certain class of net losses. If Congress had intended the section to apply to all the losses of taxpayers, the statute could have been materially shortened by simply providing that " * * * 'net loss' means the excess of the deductions allowed by section 214 or 234 (42 Stat. 239, 254) as the case may be, over the sum of the following: * * *"—proceeding with the formula. But the statute in fact reads:

"That as used in this section the term 'net loss' means *only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business); and when so resulting means* the excess of the deductions allowed by section 214 or 234, as the case may be, over the sum of the following."

The italicized words clearly restrict the application of the statute to the class of net losses defined by the italicized words, and such restriction may not be ignored.

The government construes "trade or business" in this section, to mean the same as the word "business" as interpreted by the Supreme Court in considering what sort of corporations were engaged in business under the Corporation Excise Tax law; that definition is:

"It remains to consider whether these corporations are engaged in business. 'Business' is a very comprehensive term and embraces everything about which a person can be employed. Black's Law Dict. 158, citing People v. Commissioners of Taxes, 23 N. Y. 242, 244. 'That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.' 1 Bouvier's Law Dict. p. 273." Flint v. Stone Tracy Co., 220 U. S. 107, 171, 31 S. Ct. 342, 357, 55 L. Ed. 389, Ann. Cas. 1912B, 1312.

That definition, appropriate in that and many other sections, is broad enough to cover nearly all taxpayers. If that definition be adopted as to the section in question, the intent of Congress to restrict the privilege of carrying over losses is thwarted, and the italicized words in the above quotation pass

out of the statute. The words "trade or business" have many shades of meaning, and are subject to colloquial abuses. Definitions, taken from other cases dealing with other situations and in other settings, are of little help. For example, in the following cases, the words "trade or business" were construed so as to exclude a profession: United States v. American Tobacco Co. (C. C.) 164 F. 700, 708; Pocono Spring Water Ice Co. v. American Ice Co., 214 Pa. 640, 64 A. 398, 400; Easterbrook v. Hebrew Ladies' Orphan Society, 85 Conn. 289, 295, 82 A. 561, 563, 41 L. R. A. (N. S.) 615; Bohnsack v. Mc-Donald, 26 Misc. Rep. 493, 56 N. Y. S. 347; Iselin v. Flynn, 90 Misc. Rep. 164, 154 N. Y. S. 133. In other revenue acts, Congress deemed a statutory definition necessary in order to embrace "professions and occupations" within the meaning of trade or business. Revenue Act of 1917, § 200 (40 Stat. 302). But our task is to find out, if we can, what Congress intended by using the words in this section.

Considering the manifest intention of Congress to restrict the application of the section, and the evident purpose of the law, it is our opinion that the section has no application to wage-earners, salaried or professional men. Wage-earners and salaried men may be out of work, and subject to no tax. But, employing no capital in their "trade or business regularly carried on," they suffer no net losses that should be carried over to other years. Collections may be poor for doctors and lawyers; but the sick must be treated in good times and bad; the services of lawyers are sought in bankruptcy and receiverships and litigation in hard times, as they are sought in other matters in times of prosperity. The capital of doctors and lawyers is limited to instruments and libraries, which are not for barter or sale, and the market value of which is not ordinarily reflected in income tax returns. There may exist large firms, with heavy overheads, which actually show a net loss for some years. But certainly "net losses" of salaried or professional men were not of enough public concern to command the solicitude of Congress. The petitioner is therefore right, in considering his income from his profession, and the salaries he received from the banks, as "gains or profits not derived from such trade or business," under 204(a) (3). Such income was unrelated to his business of in-vestment banking, and he was entitled to deduct this unrelated profit from his likewise unrelated losses, in arriving at his net loss.

But, if we are wrong in this, we still do not see how the deficiency assessment can be sustained. The words "trade or business" must be defined either narrowly or broadly. If the government's definition (above quoted) is accepted, respondent finds itself in but little better stead. For, if "trade or business" includes everything "which occupies the time, attention, and labor of men for the purpose of a livelihood or profit," then the pursuit of petitioner which occupied 26 per cent. of his time, for the purpose of a profit which, if made, would be taxable—his personal investment business—must be thrown into the equation. The Board of Tax Appeals apparently so thought; but if the profits and losses from all pursuits be considered, we find the petitioner sustained a net loss in 1921 of approximately that claimed. Aside from contributions and taxes, the situation on this theory would be:

Profits—

| | | |
|---|---|---|
| From the practice of law | $36,672.94 | |
| Salaries | 3,958.32 | |
| Interest | 6,736.84 | |
| Dividends | 20,351.35 | |
| Interest from partnership | 1,502.02 | |
| Dividends from partnership | 7,933.18 | $ 77,154.65 |

Losses—

| | | |
|---|---|---|
| In partnership business | $48,091.20 | |
| In personal business | 57,551.50 | |
| Interest paid | 1,895.52 | $107,538.22 |

| | |
|---|---|
| Net Loss | $ 30,383.57 |

While the result is essentially the same under either definition, we are of the opinion that the petitioner's interpretation of the statute is correct. But, in any event, the position of the government would appear to be untenable. The government must and does take the position that it may select three out of the four gainful pursuits of the petitioner, and classify them as "trade or business" and otherwise classify the fourth. With this we cannot agree.

The decision of the Board is therefore reversed.