## WILKINS PONTIAC, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71822. Filed September 21, 1960.

*F. Edward Little, Esq.*, for the petitioner.
*Harold W. Vestermark, Esq.*, for the respondent.

### OPINION.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioner's income tax for the year 1955 in the amount of $12,864.82. The sole issue is whether petitioner may deduct from its gross income a reasonable addition to a reserve for anticipated losses on conditional sales contracts which were sold with recourse.

All of the facts are stipulated and are so found.

Petitioner is a corporation organized and existing under the laws of the State of California with its principal offices in Van Nuys, California. Its tax return for the calendar year 1955 was filed with the district director of internal revenue at Los Angeles, California.

Petitioner was incorporated on November 14, 1947, under the name of Paul R. Warmee, Inc. Its name was changed in 1955 to Wilkins Pontiac. Petitioner is engaged in the operation of a Pontiac automobile agency located at 5848 Van Nuys Boulevard in Van Nuys. It maintained its books and records and filed its income tax returns on an accrual basis of accounting.

Nearly all of the sales of automobiles by petitioner during the year in issue were made by sales contracts under which some cash or a used car was received from the purchaser at the time of purchase and a contract was given by the purchaser for the balance due. These contracts were sold and assigned by petitioner to the General Motors Acceptance Corporation, a finance company, hereafter referred to as GMAC, at face value without discount and with full recourse. The pertinent provision of the conditional sales contract entered into by petitioner and GMAC is as follows:

In consideration of your [GMAC] purchase of the within contract, undersigned [petitioner] guarantees payment of the full amount remaining unpaid thereon, and covenants if default be made in payment of any installment therein to pay the full amount then unpaid to General Motors Acceptance Corporation upon demand, * * *

By virtue of this guaranty provision, petitioner in 1955 reimbursed GMAC for losses in the amount of $5,030.17. This amount was reflected in petitioner's books and in its Federal income tax return as a charge to "Cost of Sales" resulting in a reduction in gross profits of $5,030.17. The gross profit figure of $735,312.91 reported in petitioner's Federal income tax return represents gross profit after deducting $5,030.17.

Each year for several years prior to and including 1955, it was the policy of petitioner to credit an account identified as "Reserve for Losses on Contracts Discounted" an amount sufficient to cover anticipated losses based on a percentage of the balance of such contracts outstanding at the close of the taxable year. In the year 1955 the amount of $16,440.75 was credited to this reserve and claimed as a deduction in petitioner's Federal income tax return under the item identified as "Provision for losses on contracts discounted." The reasonableness of the reserve is not in issue.

Petitioner's books and records show a balance as of December 31, 1954, in the "Reserve for Losses on Contracts Discounted" in the amount of $7,874.63, and a balance as of December 31, 1955, of $24,315.38.

Credits made by GMAC to the dealer's reserve as a result of the transactions between GMAC and petitioner were duly reported as income by petitioner in the year such credits were made.

In his notice of deficiency respondent disallowed the $16,440.75 deduction for increase in the reserve account for losses on contracts sold and also disallowed the $5,030.17 actual losses charged to cost of sales on the ground that it should have been charged to the $7,874.63 beginning balance in the reserve account. Petitioner agrees that if the increase in the reserve account is deductible, the actual losses paid are not deductible in 1955.

In *Putnam* v. *Commissioner*, 352 U.S. 82 (affirming a Memorandum Opinion of this Court), which involved the right of an individual to deduct as a loss or as a bad debt amounts paid as guarantor of notes of a corporation of which the individual was a stockholder, the Supreme Court said (pp. 85–88):

The familiar rule is that, *instanter* upon the payment by the guarantor of the debt, the debtor's obligation to the creditor becomes an obligation to the guarantor, not a new debt, but, by subrogation, the result of the shift of the original debt from the creditor to the guarantor who steps into the creditor's shoes. Thus, the loss sustained by the guarantor unable to recover from the debtor is by its very nature a loss from the worthlessness of a debt. * * *

There is, then, no justification or basis for consideration of Putnam's loss under the general loss provisions of § 23(e)(2), *i.e.*, as an ordinary nonbusiness loss sustained in a transaction entered into for profit. Congress has legislated specially in the matter of deductions of nonbusiness bad debt losses, *i.e.*, such a loss is deductible only as a short-term capital loss by virtue of the special limitation provisions contained in § 23(k)(4). * * *

\* \* \* \* \* \* \*

Here also the statutory scheme is to be understood as meaning that a loss attributable to the worthlessness of a debt shall be regarded as a bad debt loss, deductible as such or not at all.

It seems clear from the *Putnam* case that any payments made by petitioner as a result of its guaranty of its customers' contracts, or any losses suffered as a result thereof, would be deductible, if at all, under section 166 of the 1954 Code. Section 166(a) provides in part that there shall be allowed as a deduction any debt which becomes worthless in the taxable year. Section 166(c) provides:

(c) RESERVE FOR BAD DEBTS.—In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts.

The above provisions have appeared in the law in substantially the same form for a number of years. See sec. 23(k), I.R.C. 1939.

Section 1.166–1, Income Tax Regs., interpreting section 166 of the 1954 Code, says:

(a) *Allowance of deduction.*—Section 166 provides that, in computing taxable income under section 63, a deduction shall be allowed in respect of bad debts *owed to the taxpayer.* * * * [Emphasis supplied.]

    \*        \*        \*        \*        \*        \*        \*

(c) *Bona fide debt required.*—Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. * * *

While this language does not appear in prior regulations dealing with bad debt deduction, see Regs. 118, sec. 39.23(k)–1, and Regs. 111, sec. 29.23(k)–1, we think the above provisions in section 1.166–1 of the regulations are a reasonable interpretation of the law and that in order to be allowed a deduction for a bad debt, the debt upon which the deduction is claimed must be a bona fide debt arising from a debtor-creditor relationship and must be a debt owing to the taxpayer.

We learn from *Putnam* v. *Commissioner*, *supra*, that there is no debtor-creditor relationship between the debtor and the guarantor, and no debt owing to the guarantor, until the guarantor pays the creditor. When petitioner sold its contracts to GMAC its position changed to that of endorser or guarantor. The debtors (petitioner's customers) were no longer debtors of petitioner but became debtors of GMAC. There were no debts owing to petitioner until it was required to pay the debtor's obligation to GMAC as a result of petitioner's contract with GMAC. *Shiman* v. *Commissioner*, 60 F. 2d 65 (C.A. 2, 1932), reversing 21 B.T.A. 288; *Peter Stamos*, 22 T.C. 885. Consequently, there were no debts owing to petitioner at the end of 1955 to support a deduction for an addition to a reserve for bad debts. Section 166 of the Code does not permit a taxpayer to deduct a reserve for bad debts which are owed to someone else. It follows that there is no basis in the law for allowing petitioner a deduction for the year 1955 for the addition to its "Reserve for Losses on Contracts Discounted."

The full force of petitioner's arguments is directed to the proposition that petitioner has consistently used this method of accounting since it was incorporated in 1947, that it conforms to sound business accounting and correctly reflects its income, and that to deny an accrual basis taxpayer the right to establish this reserve for liabilities which experience has proved it will incur in the future, and the right to deduct reasonable additions thereto simply because the contracts have been assigned, is to "completely ignore the economic facts of life" and is not justified.

There is no evidence in this record from which we could make a finding that petitioner has consistently used this method of account-

ing for this particular item since 1947 or that this treatment of the item either conforms to sound business accounting or correctly reflects petitioner's income. The stipulation of facts states only, with reference to these points, that "[e]ach year for several years it has been the policy of petitioner to credit to an account identified on the 1955 tax return as 'Reserve for Losses on Contracts Discounted' an amount sufficient to cover anticipated losses based on a percentage of the balance of such contracts outstanding at the close of the taxable year," and that "the question of the reasonableness of the reserve is not in issue."

While we recognize and agree with the general principle that tax accounting should be brought into harmony with generally accepted principles of business accounting, there is nothing in this record to convince us that the establishment of a reserve for a contingent future liability such as this is recognized as good business accounting. Furthermore, it is well established that even though good accounting practice dictates that a business set up a reserve to cover future liabilities, additions to the reserve may not be deductible. *Lucas* v. *American Code Co.*, 280 U.S. 445, 452. The burden is on the taxpayer to show that Congress intended by some provision of the law that he should be allowed the deduction he is claiming. Cf. *New Colonial Co.* v. *Helvering*, 292 U.S. 435; *Interstate Transit Lines* v. *Commissioner*, 319 U.S. 590. Petitioner has pointed to no specific provision of the law which would allow this deduction.[1]

In our opinion, in the light of *Putnam* v. *Commissioner, supra*, and *Spring City Co.* v. *Commissioner*, 292 U.S. 182, and under the law applicable to the year 1955, an addition to a reserve such as this would be deductible only under the bad debt provisions of section 166, and there can be no deduction under that section in the absence of a debt owing to petitioner. Without passing on the question whether such a contingent liability would be accruable in 1955 (but see *Brown* v. *Helvering*, 291 U.S. 193, 201), we hold that respondent correctly disallowed the deduction for an addition to the reserve.

Respondent concedes on brief that if petitioner is not permitted to deduct the addition to its reserve, it is entitled to deduct the $5,030.17 loss actually incurred in the year 1955 with respect to the contracts sold.

*Decision will be entered under Rule 50.*

---

[1] It is interesting to note that section 462 of the 1954 Code as originally enacted (repealed, Act of June 15, 1955, ch. 143, 69 Stat. 134), allowing deduction of estimated expenses attributable to a trade or business, specifically excepted from its operation in subsection (d)(2)(C), any deduction allowable under section 166 relating to bad debts. The House Ways and Means Committee in its report (H. Rept. No. 1337, 83d Cong., 2d Sess., p. A163)( indicated that deductions relating to bad debts would continue to be provided for under section 166.