**WILKINS PONTIAC, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**WILKINS PONTIAC, Respondent.**

No. 17299.

United States Court of Appeals Ninth Circuit.

Dec. 26, 1961.

894

F. Edward Little and Little, Curry & Hagen, Los Angeles, for petitioner.

John B. Jones, Jr., Acting Asst. Atty. Gen., Meyer Rothwacks and Carolyn R. Just, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before BARNES, MERRILL and BROWNING, Circuit Judges.

MERRILL, Circuit Judge.

Wilkins Pontiac, engaged in the operation of an automobile dealership in Van Nuys, California, has petitioned this court to review a decision of the Tax Court determining a deficiency in federal income tax for the year 1955.

In the course of its business, petitioner sold automobiles and received conditional sales contracts covering the balance due. Petitioner assigned these contracts to GMAC for the full face value without discount and guaranteed payment of the full amount due under the contracts. Peti-tioner since 1947 has maintained a reserve for losses sustained by virtue of its obligations as guarantor. At the end of each calendar year a credit has been made to this reserve and the amount of this credit has been deducted each year on its corporation income tax return. There is no issue as to the reasonableness of the 1955 additions to reserve. The sole issue presented by this petition is whether reasonable additions to *this reserve* may be deducted under § 166 of the Internal Revenue Code of 1954, 26 U.S.C. § 166.[1] The Tax Court has held that such additions are not deductible, 34 T.C. 1065.

It is conceded that under Putnam v. Commissioner, 1956, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144, losses sustained by petitioner under its contracts of guaranty are deductible as bad debts under § 166 (a) (1). The court in Putnam stated at pages 85 and 86, of 352 U.S., at page 176 of 77 S.Ct.:

> "The familiar rule is that, *instanter* upon the payment by the guarantor of the debt, the debtor's obligation to the creditor becomes an obligation to the guarantor, not a new debt, but, by subrogation, the result of the shift of the original debt from the creditor to the guarantor who steps into the creditor's shoes. Thus, the loss sustained by the guarantor unable to recover from the debtor is by its very nature a loss from the worthlessness of a debt. This has been consistently recognized in the administrative and the judicial construction of the Internal Revenue laws which until the decisions of the Courts of Appeals in conflict with the decision below, have always treated guarantors' losses as bad debt losses. The Congress recently confirmed this treatment in the Internal Revenue Code of 1954 by providing that a

---

1. "§ 166. Bad debts
  "(a) General rule.—
  "(1) Wholly worthless debts.—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.
      *   *   *   *   *   *   *

"(c) Reserve for bad debts.—In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts."

payment by a noncorporate taxpayer in discharge of his obligation as guarantor of certain noncorporate obligations 'shall be treated as a debt.' "

In the case before us, the Tax Court ruled that for a reserve to qualify under § 166(c) it must be a reserve for debts owing to the taxpayer and not for debts owing to someone else. It states:

"There were no debts owing to petitioner until it was required to pay the debtor's obligation to GMAC as a result of petitioner's contract with GMAC."

 Nowhere in the code or the regulations do we find any requirement that a § 166(c) reserve must relate to debts presently owing to the taxpayer. Rather, it would seem that it must relate to an existing debt as to which the taxpayer in the ordinary course of business may ultimately sustain a bad debt loss.

We know from Putnam that losses sustained by the taxpayer pursuant to its contracts of guaranty are to be deducted under § 166(a). Section 166(c) plainly states that in lieu of *such deduction* additions to a reserve may be deducted.

The commissioner directs attention to Treasury Regulations, § 1.166–1(2) (c), reading:

"Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money."

From this the commissioner reasons that a bona fide debt and a debtor-creditor relationship are required to exist before additions to the reserve are deductible. We do not so read the regulations. They are here defining "bad debts" and thus would seem to have reference to § 166 (a). Section 166(c) deals with a situation where a bona fide debt has not yet become worthless but where there is an existing risk of such a loss. The risk is every bit as real to this taxpayer under its contracts of guaranty as it would be were the debt now owed directly to it. Its obligations presently expose it to a risk of loss and that risk under Putnam is a § 166(a) risk.

We conclude that the 1955 additions to taxpayer's reserve are deductible.

The Tax Court allowed petitioner to take as § 166(a) deductions bad debt losses actually realized in 1955 in the sum of $5,030.17. The commissioner has taken a protective appeal from this allowance, contending that in the event the additions to reserve are held allowable deductions the actual losses should not be allowed as well. There is no dispute as to this.

Upon both appeals the Tax Court is reversed.