**FOSTER FROSTY FOODS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.**

Docket No. 89719. Filed February 12, 1963.

*James E. Carpenter, Esq.*, for the petitioner.
*Jack Morton, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* Deductions for bad debts are allowed by section 166(a) in the year in which worthlessness occurs, whereas (c), by allowing "a deduction for a reasonable addition to a reserve for bad debts," enables the taxpayer to take the deduction in anticipation of the actual worthlessness and to charge the current losses against the reserve thus created. The word "reasonable" brings a relative, as opposed to a definite, amount into the law. No set formula for computing "a reasonable addition" has ever been fixed by law, the regulations, or the courts. The computation depends upon the circumstances of each case and this is wise though sometimes difficult. The provisions of the Code obviously refer to debts owed to the taxpayer. Cf. sec. 1.166-1(a), Income Tax Regs. There are perhaps contingent liabilities of taxpayers for which good accounting might set up a reserve but for which the Internal Revenue Code does not allow deductions of additions to such reserve. *Lucas* v. *American Code Co.*, 280 U.S. 445, 452. Good accounting, relied upon by the petitioner, is not determinative in this case.

The reserve accounting used by the petitioner up to March 1, 1955, had created a reserve balance which the Commissioner apparently considered excessive and sufficient, without any addition, to take care of fiscal year 1956. The figures in the record do not show error on his part in reaching that conclusion. He devised a new method of determining a reserve for the petitioner to which the latter objects only in part. The record does not contain facts upon which this Court could determine a proper reserve or reasonable additions thereto and the parties, apparently, expect the Court to decide only whether the

receivables held by banks must be treated the same as those owned by the petitioner.

The petitioner argues that the discounted notes should be treated just like the ones not discounted, despite the fact that it disposed of those notes, ceased to be the creditor, was a guarantor only, and when it reacquired some of them the Commissioner included 50 percent of the outstanding reacquired debt in the addition to the reserve. The petitioner is supported in this contention by a recent decision of the Court of Appeals for the Ninth Circuit, *Wilkins Pontiac* v. *Commissioner*, 298 F. 2d 893, reversing the Tax Court decision in that case, 34 T.C. 1065. We cannot in good conscience follow the reversal because we think our opinion in that case was in line with prior decisions, correctly interpreted the law, and reached the correct result. The discounted notes, not being debts due the petitioner, could not be considered in determining a reasonable addition to a reserve for its debts until as guarantor it reacquired them and again became creditor of the debtor (*Putnam* v. *Commissioner*, 352 U.S. 82), only then could the notes be the basis for a deductible addition to its reserve for its bad debts.[2] The Commissioner has followed this interpretation of the law precisely.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

BRUCE, *J.*, concurs in the result.

---

RAUM, *J.*, concurring: The issue which the Court decides is, in my judgment, not necessary to the disposition of this case. True, the parties may have attempted to stipulate the Court into deciding whether petitioner is entitled to an addition to the reserve in respect of the discounted notes still in the hands of the bank. However, the parties cannot by stipulation force the Court to pass upon a question that need not be reached.

The only dispositive question is whether the additions to the reserve approved by the Commissioner are "reasonable." The Commissioner's method was to allow an addition measured in part by 50 percent of the previously discounted items reacquired by petitioner that were still outstanding at the end of the year. In my opinion, such a dis-

---

[2] Not only did the parties not argue the point relied upon in the concurring opinion but a fair reading of the stipulation, the opening statements, and the briefs shows that the parties are agreed upon what would be reasonable additions to the reserve, if the Commissioner is wrong in ignoring the debts owned by the banks during each of the taxable years, and that amount (including 4 percent of the discounted notes) would be larger than the amount allowed (including 50 percent of the reacquired notes).

proportionately large allowance in respect of the reacquired items is sufficient to cover all of the discounted receivables, whether still in the hands of the bank or reacquired by petitioner. The findings of the Court setting forth petitioner's actual loss experience and the balances in the reserve account show that the allowances approved by the Commissioner are "reasonable." That is all that the statute requires, and it is not necessary to deal with the troublesome issue which the parties seek to have this Court decide. Certainly, the *method* approved by the Commissioner is reasonable. There is nothing in the statute requiring the addition to the reserve to be measured by an across-the-board percentage of all debts. The question simply is whether the addition to the reserve, considered in the light of the balance already in that reserve, is reasonably calculated to absorb the anticipated bad debts. The answer to that question should not involve any conceptual inquiry into the theoretical status of the notes still in the hands of the banks. If the addition approved by the Commissioner in the light of the balances in the reserve and petitioner's actual loss experience is "reasonable," that should be an end to the matter.[3] In these circumstances there is no need to deal with the question whether *Wilkins Pontiac* should be followed. It has long been established that the Commissioner's determination will be sustained if it is correct regardless of whether he gave the correct reason for it or indeed even if he gave a wrong reason for it. *Blansett* v. *United States*, 283 F. 2d 474, 478–479 (C.A. 8); *Bernstein* v. *Commissioner*, 267 F. 2d 879, 881–882 (C.A. 5); *Acer Realty Co.* v. *Commissioner*, 132 F. 2d 512, 514–515 (C.A. 8); *Alexander Sprunt & Son* v. *Commissioner*, 64 F. 2d 424 , 427 (C.A. 4); *Crowell* v. *Commissioner*, 62 F. 2d 51, 53 (C.A. 6); *J. & O. Altschul Tobacco Co.* v. *Commissioner*, 42 F. 2d 609, 610 (C.A. 5); *Hughes* v. *Commissioner*, 38 F. 2d 755, 757 (C.A. 10); cf. *Helvering* v. *Rankin*, 295 U.S. 123, 132–133.

TIETJENS and WITHEY, *JJ.*, agree with this concurring opinion.

---

PIERCE, *J.*, dissenting: I think the Court should have followed and applied the recent decision of the Ninth Circuit in *Wilkins Pontiac* v. *Commissioner*, 298 F. 2d 893, which I believe reached the correct result.

FISHER and MULRONEY, *JJ.*, agree with this dissent.

---

[3] Indeed, even if the addition were thought not to be "reasonable," the *method* employed by the Commissioner is sound, and a correct result would simply require an upward revision of the 50 percent formula as applied to the outstanding reacquired notes. As indicated, the statute contains no requirement whatever that the addition, in order to be "reasonable," must be measured by a fixed percentage of all the notes.