FOSTER FROSTY FOODS, INC.,
Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 7425.

United States Court of Appeals
Tenth Circuit.

May 21, 1964.

James P. Turner, Pueblo, Colo. (James
E. Carpenter and Calkins, Rodden &
Kramer, Denver, Colo., of counsel, with
him on the brief), for petitioner.

Benjamin M. Parker, Washington, D.
C. (Louis F. Oberdorfer, Asst. Atty.
Gen., and Lee A. Jackson and Harry
Baum, Washington, D. C., with him on
the brief), for respondent.

Before MURRAH, Chief Judge, and
PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

This is a petition for review of a de-
cision of the Tax Court holding that the
determinative issue of the case was
whether discounted notes could be con-
sidered as a factor in establishing a
deduction for a reasonable addition to a
reserve for bad debts under 26 U.S.C.
§ 166(c) and deciding that issue in ac-

cordance with the Commissioner's determination that such discounted notes could not be so considered. The case reaches us after earlier review by the entire Tax Court, three judges dissenting, one judge concurring in the result, and three judges concurring specially upon the grounds that the issue decided by the majority was not necessary for the determination of the case. In this court the Commissioner defends the decision of the Tax Court largely upon the reasoning of the special concurrences.

Petitioner is a Colorado corporation engaged in the sale of food freezers, food and food memberships both for cash and upon credit. The company has used the accrual method of accounting and has maintained a reserve for bad debts. Customers buying upon credit were required to execute various commercial documents which petitioner customarily discounted and assigned to local banks with full recourse and an agreement to buy back delinquent accounts. During the years under review (fiscal years 1956, 1957 and 1958) petitioner discounted notes and contracts at banks, with recourse, as follows:

| Fiscal year | Value of notes discounted | Value of notes not discounted |
|---|---|---|
| 1956 | $396,010.53 | $191,725.62 |
| 1957 | 644,007.64 | 62,100.07 |
| 1958 | 876,494.73 | 56,495.77 |

Petitioner received credit to its account for the face amount of the notes and contracts less the agreed discount and less an amount to be placed in a loss reserve account. Petitioner included in income for tax purposes all amounts credited to its account and credited to the bank's loss reserve account. During fiscal year 1956 petitioner paid in excess of $43,000.00 to repurchase such accounts, in 1957 $56,000.00 and in 1958 $71,000.00.

In computing its additions to the reserve for bad debts, petitioner took into account its total sales including sales involving notes discounted with recourse. Under this method the reserve account reflected the following during the years in question:

| Fiscal year | Additions to Reserve | Charges against Reserve | Reserve Balance |
|---|---|---|---|
| | | | $20,227 (3/1/55) |
| 1956 | $16,394 | $ 7,963 | 28,658 |
| 1957 | 16,139 | 13,882* | 30,915 |
| 1958 | 43,308 | 28,859 | 45,364 |

* This figure has been increased to $16,320 to reflect the write-off of an account erroneously charged to "food membership expense."

The Commissioner rejected the above additions to the reserve and in lieu thereof applied a formula whereby the reserve balance would be equal to 4 per cent of the non-discounted accounts on hand at the end of the year plus 50 per

cent of the reacquired discounted accounts then on hand. Under this method the reserve was reconstructed as follows:

| Fiscal year | Additions to Reserve | Charges against Reserve | Reserve Balance | |
|---|---|---|---|---|
| | | | $20,227 | (3/1/55) |
| 1956 | $ –0– | $ 7,964 | 12,263 | |
| 1957 | 7,333 | 16,320 | 3,276 | |
| 1958 | 31,715 | 28,859 | 6,132 | |

Based on this adjustment the Commissioner determined deficiencies in income tax of petitioner for its fiscal years 1956, 1957 and 1958 in the amounts of $8,525.-40, $5,674.40 and $6,028.58 respectively.

In protesting the action of the Commissioner in the Tax Court, the petitioner had the burden of showing that the Commissioner had clearly abused the broad discretionary authority vested in him under section 166(c) [1] and the applicable treasury regulation [2] in his determination of a reasonable addition to petitioner's bad debt reserve. In order to "simplify the issues," the petitioner and the Commissioner submitted the controversy to the Tax Court upon a stipulation of fact which concluded with the following agreement:

"11. Petitioner concedes that for the purposes of this case only, its reserve for bad debts shall be computed in the manner of the schedule representing respondent's computation thereof for statutory notice purposes, hereinabove, paragraph 8, except for the exclusion by respondent of petitioner's notes receivable discounted; accordingly, only the aforesaid exception by respondent as to each adjustment (b) 'Reserve for bad debts,' for each of the taxable years per statutory notice of deficiency, is at issue, that is, whether the statutory notice of deficiency computation of a reasonable bad debt reserve should take into consideration petitioner's total notes and accounts receivable, including those discounted with banks, or just total notes and accounts receivable, excluding notes receivable discounted."

Against this procedural background the Commissioner now argues that petitioner has produced no evidence that the Commissioner's computation of allowable additions to reserve is unreasonable; that proof of the existence of a different reasonable method does not negative the Commissioner's method, Ehlen v. United States, Ct.Cl., 323 F.2d 535; and, as Judge Bruce states in his special concurrence, the parties cannot bind the court by stipulation as to what constitutes a dispositive legal question. We agree with each statement as an abstrac-

1. "(c) *Reserve for bad debts.*—In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts."

2. "(b) *Reasonableness of addition to reserve—(1) Relevant factors.* What constitutes a reasonable addition to a reserve for bad debts shall be determined in the light of the facts existing at the close of the taxable year of the proposed addition. The reasonableness of the addition will vary as between classes of business and with conditions of business prosperity. It will depend primarily upon the total amount of debts outstanding as of the close of the taxable year, including those arising currently as well as those arising in prior taxable years, and the total amount of the existing reserve."

tion but do not find them applicable to the case at bar.

■ The record clearly indicates that this case was accepted by the Tax Court upon what it considered a stipulation of fact as to the reasonableness or lack of reasonableness of the Commissioner's method of computation. If the Commissioner should have considered the discounted notes in his computation of allowable reserves, he is in error and his computation is unreasonable in fact; if he properly ignored the notes, his computation is reasonable. Judge Murdock, writing for the majority, words his conception of the posture of the case thus:

"Not only did the parties not argue the point relied upon in the concurring opinion but a fair reading of the stipulation, the opening statements, and the briefs shows that the parties are agreed upon what would be reasonable additions to the reserve, if the Commissioner is wrong in ignoring the debts owned by the banks during each of the taxable years, and that amount (including 4% of the discounted notes) would be larger than the amount allowed (including 50% of the reacquired notes.)"

We will not interfere with the Tax Court's interpretation and understanding of the stipulation, Commissioner v. Finley, 10 Cir., 265 F.2d 885, and consequently hold that the Tax Court properly considered the limited legal issue as finally determinative of the controversy. We hold, however, that the Tax Court incorrectly decided that issue.

In rejecting any consideration of the existence of discounted notes and contracts assigned to banks with recourse in determining allowable reserves for bad debts, the reasoning of the Commissioner and the decision of the Tax Court get no further than the flat statement that no debt exists between petitioner and its customer after assignment. The premise is faulty in application and has been rejected by the Ninth Circuit in Wilkins Pontiac v. Commissioner, 298

F.2d 893. The assignment and discounting of commercial paper with recourse is but a method of obtaining working capital and the tax concept of debt remains existent because of the continuing liability of guaranty. Putnam v. Commissioner, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144. The purpose of a reserve for bad debts, intended as it is to allow a deduction against current income for bad debts attributable to such income but arising later, would be defeated if its concept is limited to direct debt. As stated in Wilkins Pontiac, supra: "The risk is every bit as real to this taxpayer under its contracts of guaranty as it would be were the debt now owed directly to it. Its obligations presently expose it to a risk of loss and that risk under Putnam is a § 166(a) risk." 298 F.2d 895.

The judgment of the Tax Court is reversed.