BURBANK LIQUIDATING CORPORA-TION (formerly Burbank Savings & Loan Association), Petitioner,

v.

COMMISSIONER OF INTERNAL REV-ENUE, Respondent.

UNITED ASSOCIATES, INC., (formerly United Savings & Loan Associa-tion), Petitioner,

v.

COMMISSIONER OF INTERNAL REV-ENUE, Respondent.

No. 18972.

United States Court of Appeals Ninth Circuit.

July 29, 1964.

Marion E. Gubler, Rogan and Radding, Burbank, Cal., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Fred E. Youngman, Dept. of Justice, Washington, D. C., for respondent.

Before BARNES and BROWNING, Circuit Judges, and HALL, District Judge.

HALL, District Judge.

In these consolidated appeals from the Tax Court (39 T.C. 999) this court has jurisdiction under 26 U.S.C. § 7482.

The tax here in question is for the fiscal year ending February 28, 1955. The briefs are replete with calculations of dollar formulas which make the ques-tions appear complicated, but the ques-tion, common to both appellants, is a sim-ple one. It is not the precise number of dollars which may or may not be owed by the taxpayer but whether or not the for-mula prescribed by Section 593 of the Internal Revenue Code of 1954 [26 U.S.C. § 593] [formerly a part of 23(k) (1) of the Internal Revenue Act of 1939, as amended in 1951] for establishing bad debt reserves for domestic Building and Loan Associations applies to appellants for the tax year herein involved. That question in turn depends on whether or not appellants had the *legal status* of do-mestic Building and Loan Associations for the tax year involved.

A short statement of the essential and agreed facts will point up not only the question, but the proper answer to it.

Burbank in 1921 and United in 1945 were organized as domestic Building and Loan Associations under California law. At all times, including the tax year in-volved, both of them were subject to the terms and provisions of the Financial

Code of California relating to domestic Building and Loan Associations, and subject to regulations and control of the Savings & Loan Commissioner of the State of California.

On December 31, 1953, each appellant entered into an agreement with Home Savings & Loan Association (another California domestic Savings and Loan Association) for the sale of certain assets, including $35,119,356.64 worth of secured loans held by United, and $8,689,-160.31 worth of secured loans held by Burbank. Each agreement was to become effective as of March 1, 1954. Each appellant guaranteed Home against any default or loss in said loans for the ensuing period of 18 months from the effective date of the agreement, in the following language: "As a condition of this sale, Burbank (United) guarantees all loans herein transferred, as to payment of both principal and interest, for a period of 18 months from the effective date of this agreement (close of business February 28, 1954).

These agreements and transfers were submitted to and approved by the California Building & Loan Commissioner as required by the California Financial Code, Section 9200 et seq.

Thereafter Burbank changed its name from Burbank Savings and Loan Association to Burbank Liquidating Corporation, and United changed its name from United Savings & Loan Association to United Associates, Inc. Neither corporation changed any of its Articles of Incorporation, and both of the appellants remained under the regulatory jurisdiction of a California Building & Loan Commissioner although neither sought any new business after the effective date of the transfer. In other words, they were still domestic Savings and Loan Associations under the law of California.

Both the Commissioner and the Tax Court refused to apply Section 593 of the Internal Revenue Code of 1954 for the tax year involved, although each reached a different dollar figure. But as above indicated, we are not concerned with the precise calculations in terms of dollars, but only with the legal question as to whether or not appellants were entitled to the bad debt reserve permitted by Section 593.

We hold that they were entitled to the application of the formula prescribed by Section 593 for the year in question, and during the 18 month period in which each guaranteed all loans as to both principal and interest from the effective date of the agreement.

The Tax Court based its conclusion upon two propositions: (1)—that the loans did not constitute debts due the appellants during the 18 month period; and (2)—that each of the appellants had ceased to engage in the savings and loan business. It relied on Arcadia Savings & Loan Association v. C. I. R. (9 Cir. 1962) 300 F.2d 247, and distinguished Wilkins Pontiac v. C. I. R. (9 Cir. 1961) 298 F.2d 893.

We think the reliance upon Arcadia in support of the Commissioner's position is misplaced. In that case, there was involved no guarantee such as is involved in these two cases. In Arcadia, they sold all of its assets and ceased doing business and dissolved, *and had no outstanding liability*. Here, the appellants, by the terms of the agreement and under the Financial Code of California find themselves as much in the savings and loan business concerning the millions of dollars of loans guaranteed by them, for 18 months, as they ever were, except the bookkeeping.

The basis for the decision in Arcadia was that the need for such reserve ceased, following the sale of its business. Here, the need for such reserves cannot be said to cease until the expiration of the 18 months and each of the appellants then finds out how many of the loans have reverted to them under their guarantee. Not until the 18 months have passed can it be said there is no need for such reserves.

The Tax Court distinguishes Wilkins Pontiac v. C. I. R. on the premise that

the taxpayer in that case transferred the notes he received, with full recourse (i. e., without limit as to time), whereas here, the recourse was to continue only for a period of 18 months. Be it ever so short, full recourse in the strongest possible language against these appellants is contained in the guarantee clause quoted hereinabove, so that Wilkins Pontiac v. C. I. R., instead of being distinguished, supports the position of appellants.

In short, we hold that the appellants for the tax year in question and during the 18 months covered by the guarantee hereinabove quoted were, as a matter of law, engaged in business as a domestic Building and Loan Association and were entitled to set aside as a reserve for bad debts such amount of money as would be produced by the formula prescribed in Section 593 of the Internal Revenue Code of 1954.

Having reached that conclusion, it is unnecessary to consider United's second claim of error concerning the calculations made by the Commissioner as a reserve for bad debts, inasmuch as no amount of its reserve for bad debts is returnable to income for the year in question.

■ The third point made by United is that the Tax Court herein refused to allow United a deduction for ordinary losses sustained by it in what were called the Grayson loans and Southern California Builders. The Tax Court held that United had failed, by a preponderance of the evidence, to show that it is entitled to any loss deductions with respect to the loans in question. A review of the record does not indicate that such a factual holding is clearly erroneous. In order for United to be entitled to a loss deduction, be it ordinary or long term capital gain, it must prove that it did, in fact, incur such loss. The Tax Court held that it had failed in its proof, and we affirm.

■ The fourth claim of error, not present in the petition for review but included in the briefs, relates to United's income from the sale of certain lots. The Tax Court found that this property was originally acquired by United for sale to customers in the ordinary course of business, and was thus ordinary income and not capital gains. We hold that the sale of the property resulted in ordinary income rather than capital gain.

In Los Angeles Extension Co. v. United States (9 Cir. 1963) 315 F.2d 1, a question was involved as to whether or not property which was sold by the taxpayer was held primarily for sale to customers in the ordinary course of trade or business or primarily for investment purposes. This court held in that case that such a question is a question of fact, and went on to say: "This court is not accorded the right to re-try issues of fact *de novo* on the record unless the finding * * * is clearly erroneous. * * *."

A careful review of the record convinces us that the finding of the Tax Court was not clearly erroneous and the Tax Court is affirmed in that regard.

The opinion and decision of the Tax Court declining to apply the formula prescribed by Section 593 of the Internal Revenue Act of 1954 is reversed and the case is remanded to the Tax Court to make the appropriate calculations and assessment of tax by the application of that section.

The opinion of the Tax Court is affirmed in its refusal to allow United a deduction for ordinary loss sustained in connection with the Grayson and Southern California Builders loans.

The Tax Court is also affirmed in holding that United Associates did not realize a capital gain from the sale of vacant lots concerned, but that such lots were held by United primarily for sale to customers in the ordinary course of its trade and business.