**CITRUS MOTORS ONTARIO, INC., a California corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 65–396.**

United States District Court
S. D. California,
Central Division.

Nov. 23, 1965.

F. Edward Little, Los Angeles, Cal., for plaintiff.

Manuel L. Real, U. S. Atty., Loyal E. Keir, Asst. U. S. Atty., Chief Tax Division, and Robert T. Jones, Asst. U. S. Atty., for defendant.

CRARY, District Judge.

Plaintiff seeks refund of certain income taxes paid for each of the taxable fiscal years ending September 30th in 1959, 1960, 1961 and 1962.

In urging that 1½% of its contingent liability on conditional sales purchase contracts in effect at year end for automobiles sold, was a reasonable amount for plaintiff to add to its reserve for bad debts, plaintiff points out (Tr. pg. 34, lines 21–25) that defendant's Exhibit A discloses that, using the 1½% ratio, the "total losses on contracts discounted at banks" for the years 1960 and 1961 exceed the "Reserve for losses on repossession—1½% of year-end contingent liability" (See lines 11 and 3 of deft.'s Ex. A). It is the court's understanding that defendant's Exhibit A sets forth data prepared by plaintiff company at the request of defendant concerning "Reserve for Losses on Repossessions." Defendant contends that 1½% to reserve on the basis noted is, in the circumstances, excessive and unreasonable under the provisions of Section 166(c), Title 26, U.S.C., and the pertinent regulations.

Counsel for defendant refers to the fact that the "total losses on contracts discounted at banks" (line 11) includes not only losses on repossession (line 9) but includes as well losses charged back by the banks discounting the conditional sales contracts by reason of early payment of the contracts by the vendees of the cars involved (line 10, Ex. A) and that this addition was error.

During argument at the conclusion of the case and in his points and authorities filed thereafter, counsel for plaintiff readily admits that the items re the amounts charged back by the banks because of early payment on contracts (line 10) is not a proper item to be considered in determining the percentage of the total amount of contracts in force to be added to the reserve for bad debts, as provided for by Section 166(c).

The Court of Appeals, 9th Circuit, in Wilkins Pontiac v. Comm. of Internal Revenue, 298 F.2d 893 (1961), has held that a reasonable amount to reserve for bad debts is proper in determining taxable income on the accrual basis in circumstances similar to those in the case at bar. The reasonableness of the deduction in the Wilkins Pontiac case was not an issue.

Disregarding the losses resulting from early payments of contracts (line 10,

Ex. A), we find the net losses on re-possession (line 9) exceed the reserve for losses on repossession (1½% of year-end contingent liability, line 3) in only the year 1961.

The plaintiff company started in business on its incorporation in 1958. Prior thereto it had been operating as a family partnership. On incorporation, Mr. Robert Shannon was installed as vice-president and general manager and the corporation has been under this new management since 1958. The new management has deducted 1½% of year-end contingent liability as a reasonable addition to reserve each fiscal year since 1958. The burden of sustaining reasonableness of a deduction is on the taxpayer.

The regulations under Section 166(c), Title 26, U.S.C., provide, in part, as to reasonableness of additions to reserve, that such reserve is to be determined

"* * * in the light of the facts existing at the close of the taxable year of the proposed addition. The reasonableness of the addition will vary as between classes of business and with conditions of business prosperity. It will depend primarily upon the total amount of debts outstanding as of the close of the taxable year, including those arising currently as well as those arising in prior taxable years, and the total amount of the existing reserve."

Plaintiff relies on the statement in Section 30.73 of Merten's Law of Federal Income Taxation, as follows:

"A bad debt reserve is an estimate of the future losses which are expected to result from current business debts * * *. The estimate of the reserve required for any year must be measured by the conditions as they appear at the time the estimate is made * * *."

and, at Section 30.74:

"The reasonableness of an addition to a reserve for bad debts with respect to installment accounts depends upon the total amount of the capital portion of such accounts outstanding at the close of the taxable year, the then balance of the reserve account, and the experience of the taxpayer with respect to the installment accounts * * *."

In Reeves v. U. S., 10 AFTR 2d 5665 (1962), the District Court of New Mexico observes that the test is what is fair to the taxpayer and fair to the Government,

"* * * in the light of the experience of the past and projected into the future by the factors and experiences that apply generally to the type of business conducted * *."

The Black Motor Company formula bears out the propriety of considering bad debt experience for the prior five-year period. Ehlen v. U. S., 323 F.2d 535, at 539 (Court of Claims, 1963).

In Hammonton Investment & Mortgage Co. v. Commissioner of Internal Revenue, 59, page 883, Section 59,212, P–H Tax Court Memorandum Decisions, affirmed 284 F.2d 950 (3 C.A.1960), the Tax Court states, at page 886:

"* * * it is well established that the purpose underlying a reserve for bad debts is not to acquire protection from excessive losses in subsequent recession years. S. W. Coe & Co. v. Dallman, 216 F.2d 566 [46 AFTR 1035] (C.A.7, 1954). Rather its function is to absorb those debts which might reasonably be expected to become worthless during the years in which it is created. Krim-Ko Corporation, supra. Thus, reliance by petitioner upon trends in the automobile market which might develop in the future, for the purpose of computing additions to its bad debt reserve, was misplaced."

Defendant's Exhibit C in the instant case evidences the fact that the ratio of the cumulative net bad debts for the years in question to the cumulative contingent liability at the respective fiscal year ends was 0.713% for 1959, 0.935% for 1960, 1.242% for 1961 and 1.179% for 1962. The pertinent data as to what

reserve or additions thereto, if any, were maintained by Citrus Motors, the partnership, for the years prior to the incorporation in 1958, or their losses on repossession, were not available (Deft.'s Ex. B).

■■ As of September 30, 1959, the end of the fiscal year, plaintiff made its estimate as to what would be a reasonable ratio to apply in making deductions for additions to reserve. The conditions as they existed as of that date, the conditions of the business prosperity, and what losses for the ensuing year might reasonably be expected were factors to be considered. No past experience figures were available to plaintiff corporation as of September 30, 1959. In arriving at its deduction for addition to reserve for bad debts, the plaintiff was not privileged to consider possible losses in subsequent recession years unless recession was contemplated during the ensuing year. It does now appear to the court that 1½% might properly be considered unreasonably high, in the circumstances, at the end of the fiscal year, September 30, 1959. There was no prior year's experience to look back on and the experience as to loss ratio for 1959 was .713%. The evidence does not indicate there was any reason to conclude that the loss ratio for the next year (1960) would be double that of 1959. The court concludes, from the evidence in the case, that a loss ratio of 1% was reasonable, in the circumstances, for the fiscal year ending in 1959. Applying similar considerations at the end of each year, 1960, 1961 and 1962, the court concludes that a reasonable loss ratio for each of those years was, in the circumstances, 1¼%. It is to be noted that after the first year an experience record was developing, and in September, 1960, the loss ratio was .935%, in 1961, 1.242%, and in 1962, 1.179%.

The estimate of the loss ratio is to be based on conditions as they appear. There was no evidence that in estimating business conditions as to plaintiff company for the years involved there was reason to believe such conditions would be poor or that there would be any recession in the years involved. No one, of course, can tell what the future holds but the reasonableness of the reserve is to be based on conditions "as they appear at the time the estimate is made." The fact it is difficult to make the estimate does not eliminate the necessity that the deduction be reasonable in view of the available information.

The court notes, in reviewing the transcript of record on appeal (page 17) in the Wilkins Pontiac case, 298 F.2d 893, that the "Reserve for losses on contracts discounted" for the year ending December 31, 1954, was in the amount of $7,874.63 and that in the year ending 1955 the amount of $16,440.75 was credited to reserve as "Provision for losses on contracts discounted." Obviously, the contingent liabilities of Wilkins Pontiac during those years was not the same as those of plaintiff during the years involved in the instant case. Plaintiff, in the Wilkins Pontiac case, appears to have been in the business of selling automobiles just as plaintiff herein. Although Wilkins Pontiac sold pontiacs in Van Nuys, California, and plaintiff in the case at bar sold fords in Ontario, California, the cases are of sufficient similarity fact wise to warrant consideration of what Wilkins Pontiac obviously concluded was a fair ratio of deduction to reserve for bad debts, to wit, 1%. Although the reasonableness of the deduction was not in issue, the fact that it was not contested is of some import. The 1% figure would not be binding on plaintiff company but should, in the solution of our problem, receive some weight, having in mind the similar circumstances involved.

It appears to the court that Citrus Motors, in arriving at what it deemed to be a reasonable ratio for deduction (1½%) at the time the estimate was made, erroneously included the amounts charged back by banks because of early payment of contracts in arriving at its projected total losses on contracts (lines 10 and 11, Ex. A). It is also noted that Exhibit A was prepared by plaintiff com-

pany and purports to be the financial data used by it in determining the reserve for losses on repossession. If the charge back by the bank, referred to above, had been a proper item to be included in determining losses in estimating reasonable deduction to reserve for bad debts, the ratio of 1½% would, in the circumstances, have been reasonable.

As stated above, the court finds that a reasonable amount to be deducted and added to reserve for the years involved was 1% of the losses on repossession for the fiscal year 1959 and 1¼% for each of the other three years involved.

Counsel for plaintiff is requested to prepare, serve and lodge proposed Findings of Fact and Conclusions of Law and Judgment in accordance with the provisions of Local Rule 7, as amended, including computation of tax to be refunded based on the deductions to reserve found to be reasonable by the court as stated above.

This memorandum is not to be deemed a final Judgment.