**QUALITY CHEVROLET COMPANY, Inc., Petitioner,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 35–69.**

United States Court of Appeals
Tenth Circuit.

Aug. 26, 1969.

Rehearing Denied Sept. 22, 1969.

Harold D. Rogers, Wichita Falls, Tex. (Eggers, Sherrill, Pace & Rogers, Wichita Falls, Tex., on the brief), for petitioner.

Jonathan S. Cohen, Dept. of Justice, Washington, D.C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Gilbert E. Andrews and Louis M. Kauder, Attys., Dept. of Justice, Washington, D.C., on the brief), for respondent.

Before LEWIS, BREITENSTEIN and HICKEY, Circuit Judges.

LEWIS, Circuit Judge.

Pursuant to 26 U.S.C. § 7482 petitioner-taxpayer seeks review of a decision of the Tax Court of the United States holding petitioner, Quality Chevrolet Company, Inc., liable for income tax deficiencies in the amount of $11,997.67 in the year 1960, $3,158.54 in the year 1961 and $6,926.30 in the year 1962. The deficiencies were premised upon the

---

court's determination that taxpayer improperly added to its reserve for bad debts anticipated losses resulting from the prepayment of debt obligations by its customers. The sole issue presented for review is whether taxpayer is correct in its assertion that it is entitled under 26 U.S.C. § 166(g) or in the alternative 26 U.S.C § 166(c) to deduct a reasonable addition to its reserve for bad debts for 1960, 1961 and 1962 for the anticipated losses. The facts are undisputed and may be summarized.

Petitioner-taxpayer is engaged in the business of selling, repairing and servicing automobiles and trucks as an authorized Chevrolet dealer in Wichita, Kansas. Most of the sales of automobiles and trucks by taxpayer were credit transactions with the customer making a small down payment and executing a promissory note (instalment) for the balance which then included a finance charge and other incidental costs. Taxpayer's usual practice was to sell these notes at a discount with full or partial recourse to finance companies who in turn would pay taxpayer the principal amount of the note and credit a portion of the finance charge to a dealer reserve account in the name of taxpayer. The dealer reserve account represented taxpayer's participation in the finance charge based on full collection by the finance company. The portion of the finance charge not credited to taxpayer's reserve account was the finance company's profit on the transaction. Taxpayer, who was on the accrual method of accounting, correctly reported as accrued income all amounts credited to dealer reserve accounts. Commissioner

of Internal Revenue v. Hansen, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360. Such amounts totaled $78,749.69 for 1960, $87,334.90 for 1961 and $132,697.-27 for 1962.

The reserve account was in part maintained because of the then-existing Kansas law, Kan.Stat.Ann. § 16–509 (1964),[1] which required a creditor to reduce the finance charge when the debtor-customer prepaid the balance due on his note before its maturity date. In accordance with the agreement between taxpayer and the financial institutions, when a customer prepaid his note the finance company would reduce taxpayer's reserve account with a proportionate part of the reduction in the finance charge. If the reserve account was not sufficient to cover the charges, taxpayer would pay the difference in cash. The amounts that were charged to taxpayer's dealer reserve account or paid in cash because of prepayments by customers totaled $15,396.31 for 1960, $12,730.78 for 1961 and $16,546.37 for 1962.

Taxpayer elected the reserve method of accounting for bad debts and contends herein that it is entitled under § 166(c) or (g) to deduct the contested amounts as a reasonable addition to its reserve based upon its loss experience from the prepayments and the resulting reduction of its reserve accounts. The government concedes that when prepayment occurs and the taxpayer's reserve account is reduced a deduction under 26 U.S.C. § 162(a) or § 165(a) is proper, but argues that § 166 does not authorize anticipation of the loss from prepayment. We agree.

---

I. During the years involved § 16–509 provided:

Notwithstanding the provisions of any retail installment contract to the contrary, any buyer may prepay in full, whether by payment in cash, extension, renewal, or otherwise, at any time before maturity the debt of any retail installment contract and in so paying such debt shall receive a refund credit thereon for such anticipation of pay-

ments. The amount of such refund shall represent at least as great a proportion of the finance charge as the sum on the monthly time balances beginning one (1) month after prepayment is made, bears to the sum of all the monthly time balances under the schedule of payment in the contract. Where the amount of credit is less than one dollar ($1) no refund need be made.

■ In lieu of 26 U.S.C. § 166(a),[2] 26 U.S.C. § 166(c)[3] and (g) allow a current deduction in the form of a reasonable addition to bad debt reserve for bad debts attributable to current income but arising later; however neither the terms of § 166(c) nor (g), or for that matter § 166(a), call for or allow a deduction for losses which do not originate from an existing debt obligation. *See* Wilkins Pontiac v. Commissioner of Internal Revenue, 9 Cir., 298 F.2d 893.[4]

Section 166(g), which in its pertinent part provides for "a reasonable addition to a reserve for bad debts which may arise out of his [taxpayer's] liability as a guarantor, endorser, or indemnitor of *debt obligations* arising out of the sale by him of real property or tangible personal property (including related services) in the ordinary course of his trade or business * * *." (emphasis added), was designed to settle an issue that had been considered by several courts of appeal, including this circuit. Foster Frosty Foods, Inc. v. Commissioner of Internal Revenue, 332 F.2d 230; S.Rep. No. 1710, 89 Cong.2d Sess., 3 U.S.Code Cong. & Ad.News pp. 3764, 3765 (1966). Section 166 does not, nor do the cases which led to its enactment, extend the coverage of that provision to losses unrelated to an existing debt obligation. *See* Bolling v. Commissioner of Internal Revenue, 8 Cir., 357 F.2d 3; Foster Frosty Foods, *supra*; Wilkins Pontiac, *supra*.

■ The anticipated losses from which taxpayer seeks an addition to its bad debt reserve do not arise out of its status as guarantor or indemnitor of a debt obligation,[5] § 166(g), or its status as a creditor of the financial institutions, § 166(c); rather they arise out of the premature extinguishment of debts by its customers—taxpayer being required by agreement with the financial institutions to share in the mandatory reduction of the service charge. Kan.Stat. Ann. § 16–509 (1964). The anticipated loss, as was argued by the Commissioner, is clearly a payment in the nature of a refund rather than one arising from bad debts and accordingly beyond the scope of § 166(c) or (g). *Cf.* Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725. The effect of the prepayment is not to create a bad debt but to reduce the amount of the debt to zero.

The Tax Court correctly concluded that "when the petitioner suffers a loss because of prepayment of a note by a customer, the loss is not a bad debt loss within the meaning of section 166."

Affirmed.

---

2. 26 U.S.C. § 166(a) provides that "[t]here shall be allowed as a deduction any debt which becomes worthless within the taxable year."

3. 26 U.S.C. § 166(c) provides that "[i]n lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts."

4. In Wilkins Pontiac, *supra* at 895 of 298 F.2d, the court in considering the applicability of 26 U.S.C. § 166(c) to indirect debts stated that § 166(c) apparently must relate "*to an existing debt* as to which taxpayer in the ordinary course of business may ultimately *sustain a bad debt loss.*" (emphasis added).

5. The Commissioner concedes, as indeed he must, that repossession losses which occurred by reason of default can be considered by taxpayer in its computation of additions to bad debt reserves.